THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES C. ECONOMY, Defendant-Appellant.

Fourth District    Nos. 4—97—0003, 4—97—0027 cons.

Argued June 26, 1997.—Opinion filed July 24, 1997.—Rehearing denied September 11, 1997.

Glenn O. Fuller (argued), of Fuller, Hopp, McCarthy & Quigg, of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In September 1996, defendant James C. Economy entered a negotiated guilty plea in Macon County case No. 96—CF—14 to

charges of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West Supp. 1995)), battery (720 ILCS 5/12—3 (West 1994)), criminal property damage under $300 (720 ILCS 5/21—1(1)(a) (West Supp. 1995)), and violation of a condition of probation imposed in Macon County case No. 92—CF—833 after an earlier conviction of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1992)). After a sentencing hearing in both cases in October 1996, the trial court denied defendant's request for probation conditioned on treatment through the Treatment Alternatives for Safer Communities (TASC) program. Defendant was sentenced to concurrent two-year prison terms for the unlawful possession charges in case Nos. 92—CF—833 and 96—CF—14. Defendant appeals his sentences, docketed here as Nos. 4—97—0027 and 4—97—0003, respectively, and the appeals have been consolidated. He argues the trial court acted in an arbitrary manner or abused its discretion in denying probation under the supervision of a designated program for treatment pursuant to section 40—10 of the Alcoholism and Other Drug Abuse and Dependency Act (20 ILCS 301/40—10 (West 1994)) in the following findings: (1) he was unlikely to be rehabilitated through treatment; (2) there was no significant relationship between his addiction and the crime committed; and (3) his imprisonment is necessary for the protection of the public. We affirm.

## I. BACKGROUND

On Friday, October 9, 1992, defendant was arrested carrying about 1.5 grams of crack cocaine. Defendant admitted using cocaine for about a year. On January 19, 1993, he was convicted in case No. 92—CF—833 of unlawful possession of a controlled substance. 720 ILCS 570/402(c) (West 1992). On June 7, 1993, defendant was sentenced to 24 months of probation with conditions including submission of a drug evaluation and completion of any recommended drug treatment program.

In December 1993, defendant entered an outpatient drug treatment program at St. Mary's Hospital (St. Mary's) in Decatur, Illinois. Treatment specialists there recommended he be admitted to a more intensive program at the Rush Behavioral Center (Rush Center) in Chicago, but defendant refused because he wanted to stay in the Decatur area in order to continue his law practice. Defendant was discharged from the program in August 1994. Defendant submitted to random drug testing from August 1994 to March 1995 and passed a total of 23 drug screens without any indication of drug use.

On June 22, 1995, defendant pleaded guilty to a charge of domestic battery in case No. 95—CM—1124. This conduct also violated

defendant's probation conditions in No. 92—CF—833. He admitted the allegations of a petition to revoke based thereon and was fined $288, plus costs, and his probation was extended for 12 months under the same conditions as before.

The facts underlying case No. 96—CF—14 are as follows. On December 27, 1995, police were called to a Decatur residence rented by defendant. One of the windows to the house was broken, and the officers could hear someone inside calling for help. Police entered and found defendant sitting on the stairs. He had cuts over several parts of his body and blood was dripping from the area near his crotch. There were blood splatters on the wall and the premises were in disarray.

The officers attempted to speak with defendant, but he was incoherent. When they attempted to get defendant to sit in a chair, he attacked one of the officers. Defendant was thrown to the couch but got up again and jumped on top of the two officers. He was subdued and handcuffed. Defendant was taken to St. Mary's, and then to the Rush Center, where he remained in continuous treatment until his sentencing hearing on October 16, 1996.

As a result of the December 1995 incident, defendant was charged with aggravated battery (720 ILCS 5/12—4(b)(6) (West 1994)), a Class 3 felony carrying a nonextended prison term of 2 to 5 years (730 ILCS 5/5—8—1(a)(6) (West Supp. 1995)) and an extended term of 5 to 10 years (730 ILCS 5/5—8—2 (West 1994)); unlawful possession of a controlled substance and criminal property damage in excess of $300, Class 4 felonies (720 ILCS 570/402(c), 5/21—1(1)(a) (West Supp. 1995)), carrying a nonextended prison term of one to three years (730 ILCS 5/5—8—1(a)(7) (West Supp. 1995)) and an extended term of three to six years (730 ILCS 5/5—8—2a(6) (West 1994)); and battery and criminal property damage under $300, Class A misdemeanors (720 ILCS 5/12—3(b) (West 1994); 720 ILCS 5/21—1(2) (West Supp. 1995)), permitting a term of up to one year's incarceration (730 ILCS 5/5—8—3(a)(1) (West 1994)).

Defendant entered a partially negotiated plea agreement. The State agreed to dismiss the charge of aggravated battery and the felony criminal property damage charge. The State also agreed to recommend any prison terms be served concurrently and no extended terms be imposed. In exchange, defendant agreed to plead guilty to the remaining charges and forego any defense of intoxication.

At the joint sentencing hearing in the cases, defendant requested to be sentenced to probation with treatment under the TASC program. Several witnesses testified on his behalf. The State presented no witnesses. Defendant filed a written report by a TASC drug

evaluator indicating he was eligible and acceptable for the TASC program. The State requested defendant be sentenced to a prison term.

The trial court sentenced defendant to prison. In case No. 92—CF—833, on revocation of his probation, defendant received two years in prison on the 1992 unlawful possession conviction, with credit for time served, and one year of mandatory supervised release. In case No. 96—CF—14, defendant received a concurrent two-year term for the December 1995 unlawful possession charge and was fined $250 and costs for the misdemeanor battery and property damage charges.

The court denied defendant's request for probation with treatment in the TASC program. The trial court believed the imprisonment of defendant was necessary for the protection of the public, considering the harm to the victims of his battery, domestic battery, and criminal property damage. The court also noted there was no significant relationship between his drug use and the domestic battery. Finally, the court noted one of defendant's witnesses testified the TASC program has a success rate of only 35%. Given this statistic, and defendant's relapse and commission of several offenses after receiving drug treatment, the court concluded defendant was unlikely to be rehabilitated by treatment. On December 4, 1996, defendant filed his first-amended motion to reconsider sentence in each case. On December 6, 1996, this motion was denied. Defendant never filed a motion to withdraw his guilty plea.

## II. ANALYSIS

■ As a threshold matter, the State argues defendant waived this appeal because he failed to file a motion to withdraw his negotiated guilty plea and vacate the judgment. We agree defendant has waived several of his arguments. Generally, in order to perfect an appeal of a sentence, a defendant must file a motion to reconsider the sentence. 145 Ill. 2d R. 604(d). Defendant did so here. However, when a defendant appeals a sentence imposed pursuant to a negotiated plea agreement, the defendant must instead (1) move to withdraw the guilty plea and vacate the judgment and (2) show granting the motion is necessary to correct a manifest injustice. *People v. Evans*, 174 Ill. 2d 320, 332, 673 N.E.2d 244, 250 (1996).

Defendant seeks to distinguish *Evans* because the plea agreements there provided for the State to recommend specific prison terms. *Evans*, 174 Ill. 2d at 327, 673 N.E.2d at 247. Here, by contrast, the State agreed to dismiss some charges and, if defendant were to be imprisoned, seek concurrent rather than consecutive prison terms and no extended term. Defendant contends *Evans* does not apply to such partially negotiated guilty pleas.

Defendant notes the second district has not followed the rule from *Evans* in cases where the plea agreement does not include a recommendation of a specific prison term. See *People v. Wilson*, 286 Ill. App. 3d 169, 172, 675 N.E.2d 292, 294 (1997); *People v. Johnson*, 286 Ill. App. 3d 597, 600, 676 N.E.2d 1040, 1042 (1997) (refusing to require a withdrawal of guilty plea where State dropped charges pursuant to plea agreement but did not limit sentencing discretion of trial court with regard to charges not dropped).

Both cases rely on the following language from *Evans* (174 Ill. 2d at 332, 673 N.E.2d at 250):

"Our review of [*People v.*] *Wilk*[, 124 Ill. 2d 93, 529 N.E.2d 218 (1988),] and [*People v.*] *Wallace*[, 143 Ill. 2d 59, 570 N.E.2d 334 (1991),] reveals that the pleas involved in those cases were open guilty pleas. In other words, the defendants pled guilty without receiving any promises from the State in return. Following a defendant's open guilty plea, the trial court exercises its discretion and determines the sentence to be imposed. Both good public policy and common sense dictate that defendants who enter open guilty pleas be allowed to challenge only their sentences without being required to withdraw their guilty pleas. See *Wilk*, 124 Ill. 2d 93[, 529 N.E.2d 218]; *Wallace*, 143 Ill. 2d 59[, 570 N.E.2d 334]."

See *Johnson*, 286 Ill. App. 3d at 600, 676 N.E.2d at 1042; *Wilson*, 286 Ill. App. 3d at 172, 675 N.E.2d at 294, quoting *Evans*, 174 Ill. 2d at 332, 673 N.E.2d at 250.

The second district reasoned there is no logical basis for challenging a trial court's discretion when imposing a "fully negotiated" plea because the trial court did not, in fact, exercise any discretion. *Johnson*, 286 Ill. App. 3d at 600, 676 N.E.2d at 1042. However, when a partially negotiated plea leaves room for the trial court to weigh the facts and exercise its own discretion, there is a logical basis for appealing the trial court's judgment. See *Wilson*, 286 Ill. App. 3d at 172, 675 N.E.2d at 294. This is consistent with the second district's approach prior to *Evans*. See *People v. Soles*, 226 Ill. App. 3d 944, 947, 590 N.E.2d 104, 105 (1992) (by entering partially negotiated plea agreement defendant agrees to accept sentence within statutory range only if trial court properly exercised discretion in imposing it).

Contrary to the second district's approach, the primary concern of the *Evans* court was not the logical basis for reviewing the trial court, but a concern for preserving the bargain reached between the defendant and the State. Immediately after the language quoted by *Johnson* and *Wilson*, the *Evans* opinion stated the following:

"The reasoning utilized by this court in *Wilk* *** does not apply to negotiated guilty plea agreements. We agree with the State

that, under these circumstances, the guilty plea and the sentence 'go hand in hand' as material elements of the plea bargain. To permit a defendant to challenge his sentence without moving to withdraw the guilty plea in these instances would vitiate the negotiated plea agreement he entered into with the State." *Evans*, 174 Ill. 2d at 332, 673 N.E.2d at 250.

Earlier in the *Evans* opinion, the court made it clear it was trying to prevent a defendant from obtaining the benefit of his plea agreement with the State by limiting the trial court's sentencing discretion and then obtaining a further benefit by reneging on the agreement and challenging the trial court's exercise of discretion on appeal. See *Evans*, 174 Ill. 2d at 327, 673 N.E.2d at 247-48.

■ In *People v. Catron*, 285 Ill. App. 3d 36, 37, 674 N.E.2d 141, 142 (1996), this district held it would compromise this policy if defendant were allowed to appeal a sentence entered after a partially negotiated plea without filing a motion to withdraw his plea. The *Catron* opinion reasoned when a defendant agrees to a potential range of sentences in a plea agreement, he implicitly concedes any sentence imposed within the range cannot be excessive. *Catron*, 285 Ill. App. 3d at 37, 674 N.E.2d at 142. Recently, the third district also adopted this approach. See *People v. Sanders*, 286 Ill. App. 3d 1042, 1044, 678 N.E.2d 86, 88 (1997).

■ The analysis from *Catron* applies with particular force here. In exchange for defendant's guilty plea, the State agreed not to seek consecutive or extended prison terms. This part of the plea agreement would be meaningless if, as defendant now argues, any prison term would be reversible as an abuse of discretion. The risk of a prison term and the guilty plea went "hand in hand" as material elements of the plea bargain.

The approach in *Catron* has faced criticism. In *People v. Smith*, 288 Ill. App. 3d 308, 312-13 (1997), the second district reasoned it is overly simplistic to draw a distinction that treats all negotiated pleas the same. It noted negotiated pleas can involve both sentencing and charging matters (*Smith*, 288 Ill. App. 3d at 313), and it repeated the argument from *Johnson* and *Wilson* that the *Evans* opinion was not intended to extend to matters where the trial court retains some discretion (*Smith*, 288 Ill. App. 3d at 315).

This criticism is flawed. First, the plain language of *Evans* treats all negotiated pleas the same. *Evans* clearly defines an "open guilty plea" agreement to mean an agreement where "defendants pled guilty without receiving *any* promises from the State in return." (Emphasis added.) *Evans*, 174 Ill. 2d at 332, 673 N.E.2d at 250. It also clearly holds "the motion-to-reconsider-sentence provisions of Rule

604(d) apply *only* to open guilty pleas" (emphasis added) (*Evans*, 174 Ill. 2d at 332, 673 N.E.2d at 250), thereby imposing the motion-to-withdraw-plea provision in Rule 604(d) on all negotiated pleas, including this one.

Second, whether a defendant pleads guilty in exchange for a specific term or a lesser charge, his interest in the bargain is the same: to reduce the possible punishment for his offense. The bargain between the defendant and the State is no less damaged by defendant's appeal just because the agreement is less specific, *i.e.*, not all aspects of the case(s) are disposed by the plea negotiated.

*Catron* has also been criticized because it leaves room open for trial court abuses in sentencing. In a special concurrence in *Sanders*, Justice Holdridge argued:

> "Where a defendant pleads guilty in exchange for a sentencing cap, the trial court will choose from a range of potential sentences. As with an open plea, there is always the danger that the court will not properly exercise its discretion. To prohibit such a defendant from appealing an excessive sentence simply because he 'bargained for' that range is, in my opinion, fundamentally unfair." *Sanders*, 286 Ill. App. 3d at 1045, 678 N.E.2d at 88-89 (Holdridge, J., specially concurring).

We also reject this argument. First, it is unclear why it is unfair to give a defendant that for which he bargained. If a defendant does not wish to be subject to the full range of sentences, he should try to bargain with the prosecutor for a more limited range. Second, Rule 604(d) does not bar a defendant from appealing an excessive sentence, but instead requires him to withdraw his guilty plea and establish the sentence correction is necessary to correct a manifest injustice. *Evans*, 174 Ill. 2d at 332, 673 N.E.2d at 250.

■ Finally, even without a motion to withdraw, *Catron* will not bar every claim of error. A defendant can still proceed on a motion to reconsider where the defendant appeals because the trial court misapplied the law by considering improper sentencing factors, and not merely because the sentence was excessive (*Catron*, 285 Ill. App. 3d at 37-38, 674 N.E.2d at 142), so long as that issue was included in his motion to reconsider sentence (145 Ill. 2d R. 604(d)).

One of defendant's arguments falls within this exception. Defendant committed the offense of domestic violence after he started receiving treatment and there was no evidence defendant was under the influence of drugs at the time of the offense. A defendant will not be sentenced to probation with TASC supervision if the trial court finds no significant relationship between the defendant's drug use and the crime committed. 20 ILCS 301/40—10(b) (West 1994).

Defendant argues the trial court misapplied TASC guidelines when it relied on his domestic battery conviction as a reason to find no significant relationship exists between the addiction of the defendant and the crime committed, because domestic violence *was not* one of the crimes for which he was being sentenced. The court specifically stated defendant's other crimes were significantly related to his drug use and no party contests this finding on appeal. Defendant preserved this argument for review by raising it in his motion to reconsider sentence. 145 Ill. 2d R. 604(d).

The appellate record clearly supports the trial court's decision. First, because the trial court could properly consider the domestic violence conviction for an alternative purpose, defendant was not likely to be prejudiced by the trial court's alleged error. The trial court may deny defendant enrollment in the TASC program if it determines imprisonment is necessary to protect the public. 20 ILCS 301/40—10(b) (West 1994). A trial court is not to consider just the circumstances of the offense being sentenced in determining whether he poses a threat to the public, but also the history, character and condition of the individual. 20 ILCS 301/40—10(b) (West 1994). Even though defendant's drug use was significantly related to the crimes for which he was being sentenced, the trial court was not bound to ignore the underlying potential for violence reflected in these crimes. While defendant's domestic violence offense was not one of the crimes for which defendant was being sentenced, that conviction could properly be considered to determine how much violence potential remained when defendant was sober. *Cf. People v. Whitehead*, 171 Ill. App. 3d 900, 907, 525 N.E.2d 1084, 1088 (1988) (despite general rule against admitting evidence of defendant's prior bad acts to establish criminal propensity and likelihood defendant committed crime, defendant's prior threats were admissible to demonstrate defendant's violent act was not the product of temporary insanity or intoxication).

Regardless of whether the trial court also considered the domestic violence conviction in determining whether defendant's addiction was significantly related to his crimes, the findings regarding the need to protect the public from defendant and the low likelihood of rehabilitation provide sufficient grounds for its decision. See *People v. Gernant*, 242 Ill. App. 3d 833, 835, 610 N.E.2d 722, 724 (1993). Defendant was a repeat offender who had already been given the opportunity to rehabilitate himself. He was given a second chance on probation after he committed domestic battery. He failed probation a second time. Several of his offenses had victims and demonstrated a propensity for violence. The trial court did not err in rejecting proba-

tion. Defendant has waived his appeal as to these alternative grounds and, moreover, upon reviewing the record we find adequate support for the trial court's findings regarding them. Accordingly, we affirm. See *Leonardi v. Loyola University*, 168 Ill. 2d 83, 97, 658 N.E.2d 450, 457 (1995) (a reviewing court may sustain a decision on any grounds called for by the record, regardless of the original basis for the decision and regardless of the accuracy of the reasoning).

## III. CONCLUSION

We affirm the sentence imposed by the trial court.

Affirmed.

GARMAN and GREEN, JJ., concur.