THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IAN E. PITTS, Defendant-Appellant.

Fourth District   No. 4—97—0071

Opinion filed March 2, 1998.—Rehearing denied April 9, 1998.

McCULLOUGH, J., specially concurring in part and dissenting in part.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1996, the State charged defendant, Ian E. Pitts, with two separate counts of attempt (first degree murder) (720 ILCS 5/8—4(a) (West 1994); 9—1(a)(1) (West Supp. 1995)), two separate counts of armed violence (720 ILCS 5/33A—2 (West 1994)), armed robbery (720 ILCS 5/18—2(a) (West 1994)), aggravated vehicular hijacking (720 ILCS 5/18—4(a)(3) (West 1994)), and burglary (720 ILCS 5/19—1(a) (West 1994)). In August 1996, defendant pleaded guilty to both attempt (first degree murder) counts and armed robbery, pursuant to the State's agreement to dismiss the remaining charges. The parties had no agreement regarding the sentence the trial court would impose.

In October 1996, the trial court sentenced defendant to 15 years in prison on each attempt (first degree murder) conviction and six years in prison on the armed robbery conviction, with all sentences to be served consecutively.

At the conclusion of the sentencing hearing, the trial court stated its agreement with the prosecutor that defendant would have to serve 85% of his prison sentences as a result of the then-recently enacted "truth-in-sentencing" statute (730 ILCS 5/3—6—3(a)(2)(ii) (West Supp. 1995)), which modified section 3—6—3 of the Unified Code of Corrections (Code) (730 ILCS 5/3—6—3(a)(2) (West 1994)) to limit good conduct credit to no more than 4.5 days per month for a prisoner serving a sentence of attempt (first degree murder).

Defendant appeals, arguing that (1) his aggregate 36-year prison sentence was excessive and constitutes an abuse of the trial court's discretion; and (2) Public Act 89—404 (Pub. Act 89—404, § 40, eff.

August 20, 1995 (1995 Ill. Laws 4323-27)), which created the "truth-in-sentencing" statute, is unconstitutional because (a) it violates the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)), and (b) it violates the equal protection clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2). We reject defendant's first argument but agree that the "truth-in-sentencing" statute violates the single subject rule of the Illinois Constitution. Accordingly, we affirm and remand with directions.

## I. BACKGROUND

When defendant pleaded guilty in August 1996, the trial court adopted the factual basis previously presented at codefendant Jody Rinderer's guilty plea hearing. The parties also stipulated that Amanda Jones, another codefendant, would testify that the three male codefendants (defendant, Rinderer, and Jason Gaddis) agreed ahead of time that they were going to kill Victoria Bridgeman and steal her car. After the attack, defendant admitted that he had stabbed Bridgeman.

At the sentencing hearing, the trial court received evidence from both parties, including a personality inventory regarding defendant and a presentence report prepared by the probation department. The court also heard arguments and suggestions of counsel.

Information before the trial court at the sentencing hearing revealed the following. Bridgeman met defendant through a friend's neighbor and had known him for approximately two years. Defendant subsequently introduced her to Gaddis and Rinderer. On the evening of April 23, 1996, Bridgeman, defendant, Gaddis, and Rinderer were together in Bridgeman's car, which was parked "in the country." Bridgeman was seated in the driver's seat, Gaddis was in the front passenger seat, and defendant and Rinderer were in the back. Bridgeman testified that Rinderer "had been acting like a creep all night," telling her that she needed to respect him. After Bridgeman disagreed with him, the three codefendants left the vehicle ostensibly to use the bathroom.

Upon returning three to five minutes later, each of them took a new position in the car, with defendant seated beside Bridgeman and Gaddis behind her. Bridgeman and Rinderer continued arguing, and Bridgeman turned to "get input" from Gaddis. At that point, Gaddis put a cord around her neck and began strangling her. Defendant then turned toward Bridgeman, kneeling on the front seat, and began punching her in the face. Bridgeman described that initial portion of the attack as follows:

"I was trying to get a hold of [Gaddis]. They were all yelling, and I had my—my right hand underneath the cord trying to pull it away from my neck, and [defendant] just kept hitting me and hitting me. They kept yelling 'Get her.' "

Bridgeman lost consciousness. When Bridgeman awakened, her three assailants stood her up beside her car, and defendant hit her in the head with a whiskey bottle. They then began kicking her, yelling "Die bitch." Bridgeman once again lost consciousness; when Bridgeman reawakened, her assailants were trying to drag her into a ditch. She tried to fight them off and "was stabbed a few times." Once in the ditch, they kicked her and continued to yell "Die bitch." Bridgeman estimated that her three assailants yelled "Die bitch" at least 100 times during the attack. Bridgeman began pleading for her life, telling them to leave her to "die in peace." At that point, someone kicked her again, and they drove away in her car.

Bridgeman then stood up and tried "to head to safety." She stated that she had not gotten far when she saw the car turn around. She fell back to the ground on her stomach and heard them get out of her car. (By this time, her eyes were swollen shut.) One of the three walked up to her and felt for a pulse. She then heard someone say, "She isn't dead. Finish her off." After defendant and Gaddis prodded Rinderer to slash her throat, Rinderer did so. In an attempt to get them "to leave when I was dying," Bridgeman grabbed her throat and acted like she was choking on her own blood. At that point, her three assailants returned to her car, turned up the stereo, and left. After once again losing and regaining consciousness, Bridgeman walked to find help.

As a result of the attack (during which she was stabbed at least 23 times), Bridgeman was hospitalized for one week and accumulated medical bills totalling $50,000. She has several scars, including "a very big indentation" on her head, one on her left eye, one across the bridge of her nose, one on her right cheek and across her nose to her left cheek, "a very big slash" on the right side of her throat, and others "all over" her upper torso, including several scars on her breasts. Bridgeman described the impact of the attack on her life, as follows:

"I don't trust anybody. I used to trust absolutely everybody. Apparently not anymore. I am scared to go to my car. I am scared to be in the car. I cannot have anybody sitting in the backseat for fear what could happen if they do. And I can only be pretty much in well-lit areas with somebody like my sister and my mother."

Louis Pitts, defendant's father, testified on his behalf that defendant had psychiatric problems growing up and had previously been hospitalized and medicated for his "outburst disorder." Defendant

stopped taking his medications because they caused side effects and were expensive, and he "seemed to be doing pretty good."

The presentence report indicated that defendant, who was 16 years old at the time of the offense, was a member of a street gang, uses alcohol daily and drugs on a regular basis, sells drugs, and has an "explosive disorder" that causes him to become violent when angry. In September 1993, the trial court adjudicated him delinquent for committing theft. Defendant subsequently violated court supervision by committing the offenses of aggravated battery and battery. He was then sentenced to probation, and after he violated several probation conditions, the court ordered his probation terminated as unsuccessful. In May 1995, defendant was again adjudicated delinquent for committing the offenses of battery and resisting a peace officer. While in the juvenile detention center after his arrest in this case, defendant committed 24 violations of detention rules, one of which involved aggressive behavior.

## II. ANALYSIS

### A. Defendant's Claim That His Sentence Was Excessive

Defendant first argues that the trial court abused its discretion by imposing an excessive prison sentence of an aggregate of 36 years. Specifically, defendant contends that because he was only 16 years old, had limited prior contacts with the juvenile justice system, and had a history of mental and emotional problems, the trial court "failed to fully appreciate the extent of [defendant's] rehabilitative potential." We emphatically disagree.

A trial court's discretion in sentencing a defendant is entitled to great deference and weight, and this court will not alter that sentence on appeal absent an abuse of discretion by the trial court. *People v. Williams*, 287 Ill. App. 3d 262, 270, 678 N.E.2d 334, 340 (1997).

At the sentencing hearing of defendant and his accomplices, the prosecutor argued that "[t]his crime was devoid of any mercy" and that the victim suffered at least 23 stab wounds on her face, neck, torso, and hands. Throughout her ordeal, she was addressed repeatedly with the cry of "Die bitch." When her assailants realized they had not killed her, they lifted her up, slit her throat, and then left her for dead. The prosecutor also pointed out that defendant was a member of a street gang, has an explosive temper, consumes whiskey daily until he passes out, and sells cannabis to support himself.

In sentencing defendant, the trial court first stated its essential agreement with the prosecutor's arguments and then noted that the only thing worse the victim's assailants could have done was

to murder her, and "[t]hey came awfully, awfully close in attempting to achieve that." The court concluded as follows:

> "In our society[,] we cannot and will not tolerate this type of young men [sic] to be free upon the streets. We don't need these people. We don't need these types of crimes, and somebody has got to protect the society. In this particular case, it's the [j]udge. It's the [c]ourt. And[,] therefore[,] I intend to give each of these young men fairly extensive sentences to protect the public."

We agree without reservation with the trial court's conclusion, and in so holding, we reaffirm what we stated in *People v. Johnson*, 262 Ill. App. 3d 565, 572, 634 N.E.2d 1285, 1290-91 (1994), as follows:

> "People who commit crimes like this forfeit their right to walk among us as members of a free society. The courts must do all they can to ensure that these terrible crimes—and the suffering they caused this innocent victim (perhaps for the rest of her life)— never again be visited upon some other innocent victim. By putting this vicious criminal behind bars for this lengthy period, the trial court fulfilled its obligation to protect society, and we affirm the trial court's sentence."

## B. The "Truth-In-Sentencing" Statute

Defendant next argues that the "truth-in-sentencing" statute violates the single subject rule of the Illinois Constitution and is therefore invalid. Ill. Const. 1970, art. IV, § 8(d). Specifically, he asks this court to vacate the portion of his sentencing order requiring him to serve 85% of the sentence imposed and to clarify that he is to receive day-for-day credit to which he was entitled pursuant to section 3—6—3 of the Code prior to the enactment of the "truth-in-sentencing" statute. We agree.

■ Article IV, section 8(d), of the Illinois Constitution of 1970 provides, in pertinent part, as follows: "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d). In *Johnson v. Edgar*, 176 Ill. 2d 499, 514-18, 680 N.E.2d 1372, 1379-81 (1997), the Supreme Court of Illinois recently discussed this provision—the so-called single subject rule—at length when it held that the legislature violated that rule in enacting Public Act 89—428 (Pub. Act 89—428, eff. December 13, 1995 (1995 Ill. Laws 4453)). In *Johnson*, the court wrote as follows:

> "The single subject rule is a substantive requirement for the passage of bills and is therefore subject to judicial review. ***
>
> The term 'subject,' in this context, is to be liberally construed and the subject may be as broad as the legislature chooses. [Cita-

tions.] Nonetheless, the matters included in the enactment must have a natural and logical connection. [Citations.] The rule prohibits the inclusion of ' "discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other." ' [Citations.]" *Johnson*, 176 Ill. 2d at 514-15, 680 N.E.2d at 1379.

With these rules in mind, we examine Public Act 89—404, effective August 20, 1995, which contains in one of its sections the amendment to section 3—6—3 of the Code. Pub. Act 89—404, § 40, eff. August 20, 1995 (1995 Ill. Laws 4323-27) (amending 730 ILCS 5/3—6—3(a)(2) (West 1994)). That amendment contains the "truth-in-sentencing" provision of which defendant complains.

■ Public Act 89—404 contains 10 separate sections that either amend or add to Illinois statutes. Defendant asserts that Public Act 89—404 contains discordant provisions that have no legitimate relation to each other and, accordingly, violate the single subject rule of article IV, section 8(d), of the Illinois Constitution. Ill. Const. 1970, art. IV, § 8(d). Defendant is partially correct in his assertion, but that is all that is required for this court to conclude that Public Act 89—404 is void because it violates the Illinois Constitution.

The first nine sections (sections 5 through 45) of Public Act 89—404 comply with the single subject rule when liberally construed. The 10 sections deal with or concern the following: (1) the authority of sheriffs (section 5) (Pub. Act 89—404, § 5, eff. August 20, 1997 (1995 Ill. Laws 4306)); (2) the authority of certain municipal police officers (section 10) (Pub. Act 89—404, § 10, eff. August 20, 1995 (1995 Ill. Laws 4306)); (3) a modification of the insanity defense (section 15) (Pub. Act 89—404, § 15, eff. August 20, 1995 (1995 Ill. Laws 4306-07)); (4) disbursement of proceeds from forfeitures under the Cannabis Control Act (section 20) (Pub. Act 89—404, § 20, eff. August 20, 1995 (1995 Ill. Laws 4307-10)); (5) disbursement of proceeds from forfeitures under the Illinois Controlled Substances Act and modifications of certain sentencing provisions under that act (section 25) (Pub. Act 89—404, § 25, eff. August 20, 1995 (1995 Ill. Laws 4310-20)); (6) the authority of a law enforcement officer beyond that officer's jurisdiction (section 30) (Pub. Act 89—404, § 30, eff. August 20, 1995 (1995 Ill. Laws 4320-21)); (7) the prohibition of jury trials for certain forfeiture cases (section 35) (Pub. Act 89—404, § 35, eff. August 20, 1995 (1995 Ill. Laws 4321-23)); (8) the "truth-in-sentencing" addition to section 3—6—3 of the Code, which is the subject of this appeal, as well as the creation of a "truth-in-sentencing" commission, a requirement that trial courts explain the new "truth-in-sentencing" provisions at the time of sentencing, and a

modification of the insanity defense procedures (section 40) (Pub. Act 89—404, § 40, eff. August 20, 1995 (1995 Ill. Laws 4323-36)); (9) the inapplicability of homestead exemptions to drug asset forfeitures (section 45) (Pub. Act 89—404, § 45, eff. August 20, 1995 (1995 Ill. Laws 4336)); and (10) an amendment to the Hospital Lien Act providing a mechanism for nonprofit hospitals and hospitals operated by a unit of local government to file a lien upon claims and causes of actions of injured persons who have been treated by such hospitals for the payment of their treatment (section 50) (Pub. Act 89—404, § 50, eff. August 20, 1995 (1995 Ill. Laws 4336-37)). Section 50 further (1) provides that such a hospital has up to 30 calendar days to perfect and satisfy its lien; and (2) addresses the situation in which the person treated at the hospital obtains a verdict or judgment to be paid over time by means of an annuity or otherwise.

As this description makes clear, the first nine sections of Public Act 89—404 (specifically, sections 5 through 45) concern some aspect of the criminal justice system and thus fall within the designation of one "subject" in the context of article IV, section 8(d), of the Illinois Constitution of 1970. To put the matter another way, none of the first nine sections of Public Act 89—404 is "discordant" with the others because all of them can be fairly considered as having a legitimate relation to each other. *Johnson*, 176 Ill. 2d at 515, 680 N.E.2d at 1380. However, section 50, dealing with hospital liens, fails that test.

The State does not even attempt to claim that section 50 has some relationship to the other nine sections of Public Act 89—404, which all pertain in some fashion to criminal law or procedure. Instead, the State contends that because the title to Public Act 89— 404 is "An Act in relation to governmental matters, amending named acts," the 10 sections comprising Public Act 89—404 need only relate in some fashion to governmental matters, and the State asserts that they do. We disagree.

In our judgment, the State proposes an exception to the single subject rule that would effectively swallow the rule and render the supreme court's recent decision in *Johnson* a nullity. Although the title of an act should be considered in an analysis of whether it violates the single subject rule of article IV, section 8(d), of the Illinois Constitution of 1970, the title cannot be dispositive; if we accepted the State's argument, nothing would be left of the single subject rule beyond the creativity of legislative drafters to make titles of acts as broad as possible.

When the supreme court in *Johnson* spoke of the term "subject" in the context of the single subject rule, that court meant the substance of the legislative enactment at issue, which is contained

within the body of the act, namely, the sections thereof. In this case, that means sections 5 through 50 of Public Act 89—404. Accordingly, none of those sections can be discordant to the others for that act to pass constitutional muster. However, as we have demonstrated, section 50 is discordant to the other sections. Thus, we hold that no matter how liberally the single subject rule is construed, Public Act 89—404 violates that rule. See *Johnson*, 176 Ill. 2d at 516, 680 N.E.2d at 1380.

As a last matter, the State argues that if this court were to find that Public Act 89—404 was enacted in violation of the Illinois Constitution, then we should view the subsequent reenactment of the "truth-in-sentencing" provision of section 3—6—3 of the Code in Public Act 89—462, effective May 29, 1996, as "validating" section 40 of Public Act 89—404, which contained that provision. We disagree.

The offenses defendant was convicted of occurred on April 23, 1996. Public Act 89—462, which the State seeks to use to "validate" the "truth-in-sentencing" provision, was enacted May 29, 1996. Pub. Act 89—462, § 280, eff. May 29, 1996 (1996 Ill. Laws 655-58). We agree with defendant that giving effect to Public Act 89—462 under these circumstances would violate the *ex post facto* clauses of the United States and Illinois Constitutions. U.S. Const., art. I, §§ 9, 10; Ill. Const. 1970, art. I, § 16. Viewing the "truth-in-sentencing" statute as substantive is not very difficult when one realizes that, in this very case, what is at stake for defendant is whether he must serve 85%, or only 50%, of his 36-year aggregate prison sentence.

Because we hold that Public Act 89—404 violates the single subject rule of article IV, section 8(d), of the Illinois Constitution of 1970, we need not address defendant's other argument that it also violates defendant's constitutional rights to equal protection of the laws.

In so holding, we acknowledge the dissenting opinion of our distinguished colleague, Justice McCullough, and the recent decision of the Third District Appellate Court in *People v. Watford*, 294 Ill. App. 3d 462, 464 (1997), holding that a defendant's challenge to the truth-in-sentencing provisions of Public Act 89—404 cannot be brought on direct appeal but may only be brought by filing an action in *habeas corpus* or *mandamus*. We respectfully disagree with *Watford* and Justice McCullough for the following reasons.

Although section 3—6—3(a)(2)(ii) of the Code (730 ILCS 5/3—6—3(a)(2)(ii) (West Supp. 1995)) may be self-executing as far as the Department of Corrections is concerned, Public Act 89—404 does require a trial court (by the addition of subsection (c—2) to section 5—4—1 of the Code (730 ILCS 5/5—4—1(c—2) (West Supp. 1995)) to

discuss in open court the question of how much good-time credit the defendant being sentenced will receive. Further, although it is true that this new subsection provides that a trial court's error regarding this provision "may not be relied on by the defendant on appeal" (730 ILCS 5/5—4—1(c—2) (West Supp. 1995)), that statement addresses a different matter than the constitutional question before us in this case. Here, the question is not whether the trial court correctly stated—and applied—the truth-in-sentencing provision; instead, the issue is whether Public Act 89—404 can *constitutionally* require the trial court to do anything regarding good-time credit.

Moreover, we agree with defendant that the decision in *Watford* encourages piecemeal proceedings at the appellate level because many defendants will pursue a direct appeal while saving this issue to present in a subsequent petition for a writ of *mandamus* or *habeas corpus*. If Public Act 89—404 is constitutionally defective, as seems clear to us, then we see no policy reason for not so holding at this point, when the issue has been fully briefed and argued.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment and remand with directions that the trial court amend the sentencing order to reflect that defendant is eligible for day-for-day good-time credit as provided in section 3—6—3 of the Code prior to any "truth-in-sentencing" amendments added thereto.

Affirmed and remanded with directions.

KNECHT, J., concurs.

JUSTICE McCULLOUGH, specially concurring in part and dissenting in part:

I agree that the trial court should be affirmed in the imposition of sentences for defendant's armed robbery and two attempt (first degree murder) convictions. Defendant's claim that his sentence was excessive is waived for failure to file a motion to withdraw the guilty plea. *People v. Economy*, 291 Ill. App. 3d 212, 683 N.E.2d 919 (1997).

I disagree that defendant is, in this appeal, eligible for day-for-day good-time credit. The majority finds that the defendant's argument that Public Act 89—404 violates the single subject rule of the Illinois Constitution is well-taken. In the posture of this case, the constitutionality of Public Act 89—404 should not be addressed.

The truth-in-sentencing provisions set forth in section 3—6—3(a)(2)(ii) of the Code are self-executing. 730 ILCS 5/3—6—3(a)(2)(ii)

(West 1996). The majority suggests that section 5—4—1 of the Code imposes a requirement on the trial judge to state at the sentencing hearing what good-time provision applies under section 3—6—3. This suggestion is a bootstrap attempt to validate the majority's determination that Public Act 89—404 is unconstitutional.

Section 5—4—1(c—2) provides that the trial "judge shall state on the record in open court the approximate period of time the defendant will serve in custody according to the *** regulations for early release found in Section 3—6—3." 730 ILCS 5/5—4—1(c—2) (West 1996). But section 5—4—1(c—2) also provides: "This statement is intended solely to inform the public, has no legal effect on the defendant's actual release, and may not be relied on by the defendant on appeal." 730 ILCS 5/5—4—1(c—2) (West 1996). The purpose of the legislation appears to be a required admonishment to the public and not to the defendant. Supreme Court Rule 402 does not require the trial court to admonish a defendant as to what good-time credit he may receive under the provisions of article 6 of the Code. 730 ILCS 5/3—6—3 (West 1996). Section 5—4—1(c—2) makes it clear that " '[t]he actual period of prison time served is determined by the statutes of Illinois *as applied* *** by the *Illinois Department of Corrections and* the *Illinois Prisoner Review Board.*' " (Emphasis added.) 730 ILCS 5/5—4—1(c—2) (West 1996).

With this background, I suggest the constitutionality of Public Act 89—404 is not an appropriate issue to be raised by defendant in this direct appeal. Defendant entered a guilty plea and the State dismissed other charges. This issue was not raised at sentencing or included in defendant's motion to reconsider his sentence. The last sentence of Rule 604(d) is quite specific: "Upon appeal *any issue* not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment *shall be deemed waived.*" (Emphasis added.) 145 Ill. 2d R. 604(d). The supreme court's language ought to be followed. The issue is waived.

In *People v. Bryant*, 128 Ill. 2d 448, 454, 539 N.E.2d 1221, 1224 (1989), the supreme court stated a constitutional issue may be raised at any time. In *People v. Starnes*, 273 Ill. App. 3d 911, 913-14, 653 N.E.2d 4, 6 (1995), the appellate court distinguished *Bryant*, finding that *Bryant* "prohibits waiver of a challenge to the constitutionality of the statute under which a defendant is convicted." The *Starnes* court then found that pursuant to the reasoning in *People v. Sales*, 195 Ill. App. 3d 160, 551 N.E.2d 1359 (1990), waiver does apply to constitutional attacks on a collateral statute.

As the State argues, the truth-in-sentencing provisions are collateral to the statutes under which defendant was convicted and

sentenced. As pointed out heretofore, chapter III of the Code concerns the Department of Corrections (730 ILCS 5/3—1—1 through 3—15—13 (West 1996). Section 3—6—3 is self-executing. The credit for time served issue under article 6 of the Code is not an issue to be properly addressed in direct appeal in this case. Section 3—6—3(a)(2)(ii) provides that a prisoner serving a sentence for attempt to commit first degree murder "shall receive no more than 4.5 days of good conduct credit for each month of his or her sentence of imprisonment." 730 ILCS 5/3—6—3(a)(2)(ii) (West Supp. 1995). Determining credit for time served is the responsibility of the Department of Corrections, not the trial court.

For the reasons stated above, it is not necessary to address the State's argument concerning reenactment of the legislation in Public Acts 89—428 and 89—462, or Public Act 89—656 (Pub. Act 89—656, § 15, eff. January 1, 1997 (1996 Ill. Laws 3500-01)).

As in *Watford*, the issue of constitutionality is not properly before this court. The trial court's orders should be affirmed in their entirety.