THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RAYMOND E. CIESLER, Defendant-Appellee.

Second District   No. 2—98—0269

Opinion filed May 13, 1999.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Raymond E. Ciesler, was arrested and charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 1996)) and illegal transportation of alcohol (625 ILCS 5/11—502(a) (West 1996)). The trial court determined that defendant's arrest was an invalid extraterritorial arrest and granted defendant's motion to quash his arrest and suppress evidence. The State appealed. We reverse and remand.

Suzanne Berry, an Elmhurst police officer, arrested defendant at about 1:45 a.m. on June 25, 1997. When Officer Berry first approached defendant, he was slumped over the steering wheel of a truck that was parked on the shoulder of a ramp leading from Lake Street to Route 83. It is undisputed that the truck was safely parked in an unincorporated area of Du Page County, *i.e.*, the truck was outside Elmhurst's territoral limits.

Defendant filed a motion to quash arrest and suppress evidence. At a hearing on his motion, defendant testified that on June 24, 1997, he was employed as a truck driver. Defendant began work that day at 8 a.m. and worked until 10 p.m. when he parked the truck in the spot where he was arrested. Defendant testified that he parked the truck to do some paperwork and read a newspaper and that after reading the paper he dozed off. Defendant was awakened by a police officer who asked him what he was doing and told him to step out of the truck.

On cross-examination, defendant acknowledged that when the officer approached the truck the window of the truck was down, he was sitting on the driver's seat of the truck sleeping, his head was lying on his right arm, which was on the steering wheel, his left hand was out the window, and the officer came up and asked him how he was doing. Defendant denied that the truck's motor was running.

Defendant called Officer Berry as a witness at the hearing. Officer Berry's testimony included the following. Officer Berry was driving her squad car when she first observed defendant's truck. The truck was parked next to a ramp leading to Route 83. Officer Berry pulled her squad car next to the truck and observed defendant "slumped over the wheel." Defendant appeared to be sleeping, and Officer Berry was not aware of any crimes being committed by defendant. At no point during her encounter with defendant did Officer Berry notify the county sheriff of the encounter.

During cross-examination by the State, Officer Berry testified as follows. When Officer Berry first observed defendant's parked truck,

the engine was running. Officer Berry did not know defendant's condition and approached the truck with the intent to do a "motorist assist." As she stepped up to the truck's cab, the window was open and Officer Berry detected a moderate odor of alcohol emanating from the cab. Officer Berry then asked defendant, the individual sitting in the truck, for his driver's license. Officer Berry noticed that defendant's eyes were extremely bloodshot and that his speech was mumbled and thick-tongued. Officer Berry took defendant's driver's license to her squad car and ran a check on the license. While in her squad car, Officer Berry also called for another police officer as backup.

After checking defendant's license and calling for backup, Officer Berry returned to the truck cab and asked defendant to step out of the truck. Defendant got out of the truck. Outside the truck, defendant performed field sobriety tests. Officer Berry then arrested defendant. The trial court asked Officer Berry what police department she called when she called for backup. Officer Berry responded that she called the Elmhurst police department.

■ Prior to the hearing, the attorneys for both sides had agreed that the issue to be resolved was whether Officer Berry's arrest of defendant was a proper extraterritorial arrest under section 107—4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/107—4 (West 1996)). Section 107—4(a—3) allowed a police officer who was on duty to make an extraterritorial arrest if the officer became "personally aware of the immediate commission of a felony or misdemeanor violation of the laws of this State." 725 ILCS 5/107—4(a—3) (West 1996). Section 107—4(a—7) also required an officer who made such an arrest to immediately notify the local law enforcement agency of the arrest. 725 ILCS 5/107—4(a—7) (West 1996).

After reviewing section 107—4, the trial court granted defendant's motion to quash his arrest and suppress evidence. The State subsequently filed a motion to reconsider. In its motion to reconsider, the State argued that Officer Berry's arrest of defendant was proper under both section 107—4 of the Code and under section 107—3 of the Code (725 ILCS 5/107—3 (West 1996)). Following a hearing on the matter, the trial court denied the State's motion to reconsider. The State's timely notice of appeal followed.

While the State's appeal was pending, this court held that Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995) was unconstitutional because it violated the single subject rule. *People v. Reedy*, 295 Ill. App. 3d 34, 44 (1998). The decision in *Reedy* was relevant to the State's appeal in this case because the subsections of section 107—4 of the Code that the parties agreed were at issue in this case, subsections (a—3) and (a—7), were first added to section 107—4 in Public Act 89—404.

■ When an act is determined to be unconstitutional because it violates the single subject rule, the effect is to render invalid each and every provision of the unconstitutional act regardless of whether the individual provisions in the act could pass constitutional muster. *Johnson v. Edgar*, 176 Ill. 2d 499, 512 (1997). Thus, the effect of the determination in *Reedy* that Public Act 89—404 violated the single subject rule was to render invalid section 107—4 as amended by Public Act 89—404.

■ In a supplemental appellate brief, the State first argued that we should not follow *Reedy* because it was wrongly decided. However, that issue was settled when our supreme court affirmed *Reedy*. *People v. Reedy*, 186 Ill. 2d 1 (1999) (modified upon denial of rehearing). Accordingly, the State's argument that defendant's arrest was proper under section 107—4, as amended by Public Act 89—404, fails because section 107—4 as amended by Public Act 89—404 was invalid.

Alternatively, the State contends that a reenacted version of the amendment to section 107—4 should apply retroactively to defendant's arrest. In Public Act 90—593 (Pub. Act 90—593, eff. June 19, 1998) the legislature enacted an amendment to section 107—4 that appears to be identical to the amendment it made to section 107—4 in Public Act 89—404. The State refers to this amendment as a reenactment and argues that it should apply retroactively to the date that defendant was arrested, June 25, 1997.

However, there is nothing in the language of section 107—4 as amended by Public Act 90—593 that indicates the legislature intended it to apply retroactively. Because section 107—4 governs the propriety of an arrest, it affects substantive rights, not merely procedures. Therefore, section 107—4 as amended by Public Act 90—593 does not apply retroactively; rather, it applies to a given case only where the alleged offense was committed after the effective date of the amendment. See *People v. Pitts*, 295 Ill. App. 3d 182, 190 (1998) (retroactive application of provision affecting substantive rights would violate the *ex post facto* clauses of the United States and Illinois Constitutions). In this case, the alleged offenses occurred before the effective date of the amendment to section 107—4 by Public Act 90—593. Therefore, section 107—4, as amended by Public Act 90—593, does not apply to this case.

■ Finally, the State contends that Officer Berry's arrest of defendant was proper under section 107—3 of the Code (725 ILCS 5/107—3 (West 1996)). Section 107—3 provides:

"Any person may arrest another person when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed." 725 ILCS 5/107—3 (West 1996).

The State asserts that Officer Berry approached defendant no differently than any citizen might have approached him to inquire if he was in need of assistance. In the State's view, once she approached defendant to determine if he needed assistance, Officer Berry's later investigation of defendant was appropriate under section 107—3 because she merely used her powers of observation, as any citizen could, to determine that defendant was committing an offense. The State argues that Officer Berry could legitimately question defendant and request him to perform field sobriety tests because she used no more than her personal observation to establish reasonable grounds to believe that defendant was committing a criminal offense other than an ordinance violation.

Defendant responds that Officer Berry did not have reasonable grounds to believe that he was committing an offense when she approached him. Defendant also maintains that, contrary to the State's position, Officer Berry did more than use her powers of observation to investigate whether defendant was committing an offense. Defendant argues that Officer Berry used her powers of office to investigate whether he was committing an offense and that his arrest was therefore improper because it was beyond the scope of section 107—3.

■ We first address our standard of review. A reviewing court generally will not disturb a trial court's ruling on a motion to suppress evidence unless the ruling is manifestly erroneous. *People v. Gonzalez*, 184 Ill. 2d 402, 411 (1998). This deferential standard of review is applied where the motion to suppress turns on findings of fact and is grounded in the reality that the trial court is in a superior position to determine and weigh the credibility of the witnesses and resolve conflicts in their testimony. *Gonzalez*, 184 Ill. 2d at 412. However, when the trial court's determination of the witnesses' credibility was neither clearly erroneous nor against the manifest weight of the evidence, a reviewing court then conducts *de novo* review of the legal questions raised by the appeal. *Gonzalez*, 184 Ill. 2d at 412.

In this case, the credibility determinations made by the trial court are not at issue. We therefore review the legal questions raised by the appeal *de novo*.

■ A police officer acting outside his or her jurisdiction retains all the rights of an ordinary citizen, including the right to make a citizen's arrest as provided by section 107—3. *People v. Lahr*, 147 Ill. 2d 379, 382 (1992). However, a police officer's right to arrest under section 107—3 is no greater than that of a private citizen; therefore, an extraterritorial arrest by a police officer will not be upheld under section 107—3 if in making the arrest the officer uses the powers of her office to obtain evidence not available to a private citizen. *Lahr*, 147

Ill. 2d at 382-83. On the other hand, when a police officer outside her jurisdiction has obtained evidence sufficient to warrant a traffic stop through her own observations without resorting to the power of her office, the subsequent use of her powers of office to acquire further evidence not available to a private citizen does not invalidate an arrest. *People v. Plummer*, 287 Ill. App. 3d 250, 253 (1997).

■ We conclude that Officer Berry's extraterritorial arrest of defendant was valid because she obtained evidence sufficient to warrant a traffic stop merely by using her own powers of observation without resorting to the powers of her office. Therefore, any subsequent use of the powers of her office by Officer Berry to develop probable cause to arrest defendant would not have been improper.

It is undisputed that when Officer Berry initially approached defendant she did not suspect that defendant was committing an offense. Rather, she approached defendant no differently than any other citizen might have approached him to inquire if he needed assistance. As Officer Berry approached defendant to inquire if he needed assistance, she smelled the odor of alcohol through the open window of the truck in which defendant was sitting. Officer Berry asked defendant how he was doing and observed that defendant's eyes were extremely bloodshot and that his speech was mumbled and thick-tongued. These are indicia of possible intoxication and were sufficient to provide Officer Berry with articulable suspicion that defendant had committed the offense of DUI. See *People v. Scott*, 249 Ill. App. 3d 597, 604 (1993) (similar indicia of intoxication supported probable cause to arrest).

After her observations of defendant, but before arresting defendant, Officer Berry asked defendant for his driver's license, took the license and ran a computer check on it, called for backup, told defendant to get out of the truck, and had defendant perform field sobriety tests. There is no question that taking a person's driver's license and running a computer check on it, calling in backup officers, and requiring a person to exit his vehicle and perform field sobriety tests are resources available to a police officer in her official capacity and not available to a private citizen. However, Officer Berry had previously obtained evidence sufficient to warrant a traffic stop through her own observations without resorting to the powers of her office. Therefore, it was proper for her to use the powers of her office to obtain additional evidence.

Defendant's argument that Officer Berry was required to have an articulable suspicion that he had committed an offense before she approached him does not change our conclusion. A police officer does not violate a person's constitutional rights merely by approaching the person on the street or in another public place and putting questions

to the person if he is willing to listen. *People v. Crocker*, 267 Ill. App. 3d 343, 345 (1994). Such a police-citizen encounter does not involve coercion or detention and is referred to as a community caretaking function or public safety function. *People v. Murray*, 137 Ill. 2d 382, 387 (1990).

Defendant does not claim that he was unwilling to listen to Officer Berry when she approached him or that Officer Berry coerced or detained him at that point. Defendant acknowledged that when Officer Berry first approached him she merely asked him how he was doing. Based on this record, we cannot say that Officer Berry's initial approach to defendant was improper.

The judgment of the circuit court of Du Page County is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

THOMAS and RAPP, JJ., concur.