NOTICE

Decision filed 08/24/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0217

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| | ) Circuit Court of |
|    Plaintiff-Appellee, | ) Williamson County. |
| | ) |
| v. | ) No. 05-CF-571 |
| | ) |
| JOHN H. ERBY IV, | ) Honorable |
| | ) Ronald R. Eckiss, |
|    Defendant-Appellant. | ) Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a bench trial in the circuit court of Williamson County, defendant, John H. Erby IV, was found guilty of participation in methamphetamine manufacturing (720 ILCS 646/15(a)(2)(A) (West Supp. 2005)). Defendant appeals the denial of his motion to suppress. On appeal, the issue is whether a police officer patrolling outside his jurisdiction used the powers of his office to obtain evidence when his ability to recognize evidence of a crime was due to his training and experience. We affirm.

FACTS

Officer Kendrick of the Johnston City police department was on patrol in his squad car, but outside of his jurisdiction, when he saw a blue car sitting in the middle of the road. Officer Kendrick drove alongside the driver's side of the stopped vehicle and, while sitting in the patrol car, saw defendant slumped over the steering wheel. After Officer Kendrick activated his patrol lights, defendant awoke and rolled down his window.

An odd odor emanated from defendant's car. Officer Kendrick, as a trained and experienced police officer, knew this to be the smell of anhydrous ammonia–a telltale sign

1

of methamphetamine production.

A conversation ensued. Officer Kendrick asked if defendant needed help, and defendant responded with an unintelligible mumble. Officer Kendrick asked if there was a meth lab in the car, and defendant stated something about items being possessed by a Bubba McKay. Officer Kendrick looked through the driver's side window and saw a metal funnel and a Mason jar full of pills soaking in liquid. The officer believed he had, indeed, found a mobile meth lab.

Officer Kendrick radioed for the local jurisdiction to send an officer. A West Frankfort police officer responded and Officer Kendrick assisted in placing defendant in handcuffs. He noticed that defendant smelled of anhydrous ammonia and that defendant's hands were dingy. From outside defendant's car, Officer Kendrick saw a rubber hose and several flashlights on the backseat–common tools for a meth lab operating at night. Officer Kendrick asked the Illinois State Police to send a meth response team, and he filled out an inventory of the car.

Defendant moved to suppress all the evidence seized during his arrest. The circuit court conducted a hearing and denied the motion. After a stipulated bench trial, defendant was found guilty of participating in the manufacture of methamphetamine. Defendant appeals.

ANALYSIS

Because Officer Kendrick was outside his jurisdiction, his position as a police officer did not give him authority to arrest defendant. Kendrick was acting as a private citizen throughout the time he interacted with defendant. Nonetheless, police officers may, like any other private citizen, effectuate an extraterritorial arrest when a crime is being committed. 725 ILCS 5/107-3 (West 2004); *People v. Lahr*, 147 Ill. 2d 379, 383, 589 N.E.2d 539, 540 (1992). Although an officer may use any proper tool at his disposal to restrain a suspect, he

may not use the powers of his office to gather evidence outside his jurisdiction. *People v. Kleutgen*, 359 Ill. App. 3d 275, 279, 833 N.E.2d 416, 420 (2005). In those situations, the officer's powers to investigate are no greater than those of other private citizens, and he may not use the powers of his office to obtain evidence unavailable to similarly situated citizens. *Lahr*, 147 Ill. 2d at 383, 589 N.E.2d at 540. The issue, then, is whether Officer Kendrick used the powers of his office to gather evidence unavailable to him as a private citizen.

The characterization of an exterritorial arrest as a citizen action has rung hollow when officers have relied upon police equipment to gather evidence necessary for the arrest. The choice tool of the traffic police–the radar gun–provides the prime example. See *People v. Lahr*, 147 Ill. 2d 379, 383, 589 N.E.2d 539, 540 (1992); *People v. Kirvelaitis*, 315 Ill. App. 3d 667, 672, 734 N.E.2d 524, 528-29 (2000). In *Lahr*, the Illinois Supreme Court found that the extraterritorial arrest of a speeding motorist was not valid. The court affirmed the appellate court's stance that the use of equipment not available to the average citizen was an exercise of police authority. The court admitted that although a citizen could hypothetically purchase a radar gun, the likelihood of that occurring was remote. The use of the radar gun, therefore, was an exercise of police authority that tainted the claim of a citizen's arrest. *Lahr*, 147 Ill. 2d at 383, 589 N.E.2d at 540.

*Kirvelaitis* expounded on *Lahr*. *Kirvelaitis* also involved an extraterritorial traffic stop based on a radar gun reading. Relying on *Lahr*, *Kirvelaitis* reversed convictions for traffic offenses derived from the use of a radar gun. The court stated, "[T]he use of the radar gun took the arrest outside the purview of a citizen's arrest because private citizens generally do not have access to radar guns." *Kirvelaitis*, 315 Ill. App. 3d at 672, 734 N.E.2d at 529 (citing *Lahr*, 147 Ill. 2d at 383, 589 N.E.2d at 540). The court noted, however, "[W]hen an officer's own observations provide a sufficient basis to arrest the defendant, an officer subsequently may use the powers of his office to make the arrest." *Kirvelaitis*, 315 Ill. App.

3

3d at 672, 734 N.E.2d at 529 (citing *People v. Ciesler*, 304 Ill. App. 3d 465, 471, 710 N.E.2d 1270, 1274 (1999)). The court then proceeded to address the State's claim that the arrest was based on the unaided personal observations of the officer:

> "The question then becomes whether Officer Symonds actually observed defendant speeding before he used his radar gun. The testimony showed that Officer Symonds observed defendant driving at a high rate of speed. A high rate of speed could very well mean 45 miles per hour, which was the posted speed limit. The problem is that Officer Symonds never testified that he observed defendant speeding. We would be presented with a very different situation if Officer Symonds testified that he had experience as a traffic officer, knew when cars were speeding, and observed, based on his experience, that defendant was speeding. Without this type of evidence, we cannot say that Officer Symonds saw defendant speeding and then used his radar only after making this visual observation." *Kirvelaitis*, 315 Ill. App. 3d at 672-73, 734 N.E.2d at 529.

Defendant asserts that but for Officer Kendrick's training and experience as a police officer, he would not have recognized the smell of anyhdrous ammonia or the significance of what he witnessed. This makes no difference. As *Kirvelaitis* suggests, the ability of an experienced law enforcement officer to interpret what he witnesses is not an exercise of the powers granted to police. The skills possessed by Officer Kendrick were the same he possessed off duty or otherwise acting as a private citizen. Kendrick's use of his cognitive skills, obtained by police experience or otherwise, to interpret what he witnessed was not an exercise of authority.

An extraterritorial arrest based solely on the unaided observations of an officer is not an exercise of police authority if the officer does not use the powers of his office to obtain evidence unavailable to a private citizen. For example, extraterritorial arrests have

4

withstood scrutiny when the officer based his stop on seeing improper lane usage or hearing an all-points bulletin on the police radio. *People v. Kleutgen*, 359 Ill. App. 3d 275, 279, 833 N.E.2d 416, 420 (2005) (an arrest for driving under the influence was made after the officer saw the car weaving); *People v. Shick*, 318 Ill. App. 3d 899, 905, 744 N.E.2d 858, 863 (2001) (a valid citizen's arrest because "defendant made no showing that an ordinary citizen would not have been able to monitor the police radio band").

The precedent most similar to the case at hand is *People v. Ciesler*, 304 Ill. App. 3d 465, 710 N.E.2d 1270 (1999). In *Ciesler*, an officer observed a truck safely parked on the shoulder of a road outside her jurisdiction. Upon approaching the truck, the officer saw the defendant slumped over the wheel. The officer saw the defendant's bloodshot eyes, smelled the odor of alcohol, and heard a thick-tongued response from the defendant. She then had the defendant perform field sobriety tests. *Ciesler*, 304 Ill. App. 3d at 468, 710 N.E.2d at 1272-73. The court found that the officer "approached defendant no differently than any other citizen might have approached him to inquire if he needed assistance." *Ciesler*, 304 Ill. App. 3d at 471, 710 N.E.2d at 1275. The court stated:

> "We conclude that Officer Berry's extraterritorial arrest of defendant was valid because she obtained evidence sufficient to warrant a traffic stop merely by using her own powers of observation without resorting to the powers of her office. Therefore, any subsequent use of the powers of her office by Officer Berry to develop probable cause to arrest defendant would not have been improper." *Ciesler*, 304 Ill. App. 3d at 471, 710 N.E.2d at 1274-75.

As the officer in *Ciesler*, Officer Kendrick approached defendant in a manner that might have been used by any other citizen. He approached defendant as a caretaker checking on a car stalled in the road. See *Ciesler*, 304 Ill. App. 3d at 471, 710 N.E.2d at 1275. As in *Ciesler*, Kendrick saw, smelled, and heard defendant. Officer Kendrick used

5

his own powers of observation without resorting to the powers of his office. The fact that Officer Kendrick was better able to interpret what he observed does not move his actions from those of a citizen to those of police power.

Accordingly, the order of the circuit court is hereby affirmed.

Affirmed.

CHAPMAN and SPOMER, JJ., concur.

NO. 5-06-0217

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 05-CF-571 |
| | ) | |
| JOHN H. ERBY IV, | ) | Honorable |
| | ) | Ronald R. Eckiss, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed**:     August 24, 2007

**Justices**:     Honorable Richard P. Goldenhersh, J.

Honorable Melissa A. Chapman, J., and
Honorable Stephen L. Spomer, J.,
Concur

**Attorneys for Appellant**     Daniel M. Kirwan, Deputy Defender, Paige Clark Strawn, Assistant Defender, Office of the State Appellate Defender, Fifth Judicial District, 117 North Tenth Street, Suite #300, Mt. Vernon, IL 62864

**Attorneys for Appellee**     Hon. Charles Garnati, State's Attorney, Williamson County Courthouse, Marion, IL 62959; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Kendra S. Peterson, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864