THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KaRON D. GREEN, Defendant-Appellant.

Fourth District  No. 4—98—0130

Opinion filed December 18, 1998.

768

COOK, J., dissenting.

Jeff Justice, of Campbell & Robinson, of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1997, the State charged defendant, KaRon D. Green, with armed violence (720 ILCS 5/33A—2 (West 1996)) and possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 1996)). In August 1997, defendant filed a motion to suppress evidence, and in September 1997, the trial court heard and denied it.

In October 1997, the trial court conducted a bench trial, at which the parties stipulated that the court could consider the evidence previously presented at the hearing on defendant's motion to suppress. Fol-

lowing the stipulated bench trial, the court found defendant guilty of armed violence and possession of a controlled substance. The court later sentenced defendant to 15 years in prison on the armed violence conviction, the minimum sentence statutorily permitted. 720 ILCS 5/33A—3(a) (West 1996).

Defendant appeals, arguing that (1) the trial court erred by denying his motion to suppress evidence; and (2) under the circumstances of this case, the 15-year mandatory minimum sentence for armed violence violates the disproportionality and due process clauses of the Illinois Constitution. We affirm.

## I. BACKGROUND

At the September 1997 hearing on defendant's motion to suppress evidence, the only witnesses who testified were defendant and Decatur police officer David Pruitt. Pruitt testified that on the afternoon of May 4, 1997, he was dispatched to the area of Church and Leafland Streets in Decatur because an unidentified caller had informed the police that a black male, wearing blue jeans and having gold teeth, was on the corner pointing a gun at another black male, who had long hair. Pruitt drove to the intersection and saw a white Buick parked nearby with three black males inside.

Pruitt parked his car about 30 feet from the Buick and watched as the occupants got out of that car. One of them, defendant, who was wearing blue jeans and a sweatshirt began walking toward Pruitt. As defendant approached Pruitt, Pruitt asked defendant if Pruitt "could talk to him for a minute. He complied." Defendant stopped to speak with Pruitt, who told defendant about the call the police had received and asked defendant if he had seen anything like that. Pruitt then testified that defendant "raised his arm in disgust at something I guess I had said." When defendant made this gesture, the sweatshirt covering his jeans pocket raised up, permitting Pruitt to see a bulge in defendant's right front jeans pocket. Pruitt believed the bulge was a small handgun based on his training, experience, and the outline of the object.

Pruitt then asked defendant to put his hands on his head. Defendant complied, and Pruitt patted down the outside of defendant's clothing where he saw the bulge. When he felt what he believed to be a handgun inside defendant's pocket, Pruitt removed the object from defendant's pocket and found it to be a .38 caliber Danish derringer.

Pruitt then arrested defendant and placed him in the backseat of Pruitt's squad car for transport to the police station. Pruitt subsequently found some cocaine in the backseat of his squad car. Although that cocaine was the basis of the possession of a controlled substance

charge against defendant, defendant did not contest the State's claim that the cocaine found in Pruitt's squad car came from defendant.

Defendant testified substantially the same as Pruitt. Defendant said that as he walked from the Buick, Pruitt said, "could you please come here." On cross-examination, the prosecutor asked defendant the following questions and received the following answers:

> "Q. And then your testimony is that [Pruitt] asked you, can I search you, correct?
> A. Yeah.
> Q. And you told him that he could?
> A. Yeah."

Defendant also acknowledged that he had the handgun in his right front jeans pocket.

The trial court denied defendant's motion, explaining, in part, as follows:

> "The [d]efendant testified he gave consent to search. The only issue is whether the initial stop is appropriate. It is clear under these circumstances that it was. Even if the [d]efendant did not give his consent to search, the search is appropriate under these circumstances."

As stated earlier, defendant later stipulated that the trial court could consider at his bench trial the evidence presented at the hearing on the motion to suppress. The court did so, found defendant guilty of armed violence based upon his being armed with a handgun while committing the offense of possession of a controlled substance, and later sentenced defendant to 15 years in prison upon that conviction. This appeal followed.

## II. ANALYSIS

### A. Defendant's Motion To Suppress

Defendant first argues that the trial court erred by denying his motion to suppress. Specifically, defendant claims that Pruitt had no authority to conduct an "investigatory stop" of defendant because Pruitt had no basis to believe or suspect that defendant had committed, was committing, or was about to commit a criminal offense. The problem with defendant's argument is that the record does not support his claim that the police made an "investigatory stop" of defendant in the first place.

In *People v. Murray*, 137 Ill. 2d 382, 387-88, 560 N.E.2d 309, 311-12 (1990), the supreme court discussed police-citizen encounters as follows:

> "There are, theoretically, three tiers of police-citizen encounters. [Citation.] One tier involves an arrest of a citizen, which action

must be supported by probable cause; otherwise, the fourth amendment prohibition against unreasonable seizures is violated. [Citation.] The next tier involves a so-called *'Terry'* stop, a brief seizure that must be supported by a reasonable suspicion of criminal activity to be within acceptable fourth amendment boundaries. [Citation.] The last tier involves no coercion or detention and therefore does not involve a seizure. This tier is commonly known as the community caretaking function or public safety function. The Supreme Court elaborated on this level of police intrusion in *Terry* when it noted that '[o]bviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' *Terry v. Ohio* (1968), 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16; [citation]."

■ As the State points out, the record in this case shows that defendant approached Pruitt and stopped to speak with him at Pruitt's request. Because nothing about this encounter was coercive or somehow involved the use of physical force or a show of authority, the fourth amendment simply does not apply.

Further, the record shows—as the trial court found—that once defendant and Pruitt began conversing, either (1) defendant consented to the search of his person (according to defendant's testimony); or (2) defendant raised his arms in a fashion to reveal the bulge in the outline of a handgun in his right front jeans pocket (according to Pruitt's testimony). Either way, Pruitt possessed authority to seize the handgun from defendant's person and arrest him based thereon.

The supreme court in *Murray* held that a "trial court's ruling on a motion to suppress should not be overturned unless it was manifestly erroneous." *Murray*, 137 Ill. 2d at 387, 560 N.E.2d at 311. Based upon our review of the record, we conclude that the trial court's ruling denying defendant's motion to suppress was far from manifestly erroneous.

### B. The Constitutionality of Defendant's 15-Year Sentence for Armed Violence

■ Last, defendant argues that his 15-year sentence under the armed violence statute for an underlying probationable offense (possession of a controlled substance), which itself carries a maximum term of imprisonment of three years, violates the disproportionality and due process clauses of the Illinois Constitution. Specifically, defendant contends that the severe penalties imposed by the armed violence statute

"are not about deterrence, but are purely about punishment. If the armed violence statute were intended to deter the commission of a crime while carrying a gun and the violence which could potentially result[,] it should not be punished more severely than the commission of a crime *using* a gun." (Emphasis in original.)

We disagree.

The supreme court recently addressed—and rejected—similar arguments challenging the constitutionality of the armed violence statute. In *People v. Koppa*, 184 Ill. 2d 159, 172 (1998), the court wrote the following:

"The plain language of the armed violence statute demonstrates that the legislature was targeting the carrying of a weapon in the commission of felonies. *** Given the required presence of a weapon for an armed violence offense, the legislature reasonably could have decided to impose a more stringent penalty [than it did for aggravated criminal sexual abuse and aggravated kidnapping (the other charges involved in *Koppa*)] because of the high risk of bodily harm associated with the presence of a weapon. We will not disturb the legislature's determination that such conduct is worthy of a greater penalty."

We also reject defendant's argument that the penalty for the predicate felony—here, a maximum of three years in prison with the possibility of probation—should somehow restrict the legislature's authority to impose severe penalties upon conviction of that same Class 4 felony *when the offender is carrying a gun*. Reflecting societal concerns, the legislature could reasonably conclude that persons who commit felonies *of whatever nature* while carrying a gun ought to receive a mandatory minimum 15-year prison sentence *both* as punishment and deterrence. Obviously, the people who commit such crimes are being punished; further, the very harshness of their punishment should make it clear to other persons contemplating committing felonies that they better not do so while armed. We deem that message to be entirely appropriate.

Citing *People v. Davis*, 177 Ill. 2d 495, 687 N.E.2d 24 (1997), defendant argues that the mandatory 15-year minimum sentence for armed violence in this case violates the proportionate penalties clause of the Illinois Constitution. Specifically, defendant contends that *Davis* requires a general cross-comparison analysis. In *Koppa*, the supreme court addressed this same argument by a defendant charged with aggravated criminal sexual abuse and aggravated kidnapping and wrote the following:

"The third test [(which is the only one that applies to defendant's claim in this case)] under the proportionate penalties clause remains to be considered. It provides that the proportionate penal-

ties clause [of the Illinois Constitution] is violated where conduct that creates a less serious threat to the public health and safety is punished more harshly than a similar but more serious offense. See *Davis*, 177 Ill. 2d at 503; [citations]. This court has recognized that, although the proportionate penalties clause places some restraint on legislative power to define offenses and prescribe penalties, the legislature is more aware of the evils confronting our society and therefore is more capable of measuring the seriousness of various offenses. ***

***

Defendant *** contends that the armed violence offenses violate the constitutional guarantee of proportionate sentences because they share the same purpose as the other charged offenses. According to defendant, the purpose behind each charged offense was to deter and punish the use of a weapon while committing a felony. Defendant therefore reasons that, because the purpose of the offenses are the same, a more stringent penalty for armed violence is constitutionally disproportionate.

This court has recognized that, where offenses serve a different purpose, each offense can be subject to different penalties. [Citation.] It has already been determined that the legislature passed the armed violence statute with the purpose of deterring persons from carrying dangerous weapons when they commit a felony. [Citation.] The same purpose does not exist for aggravated criminal sexual abuse and aggravated kidnapping, which can arise in situations where a weapon is not involved. Thus, it can be presumed that the legislature considered different factors in enacting the penalty provision for armed violence than for aggravated criminal sexual abuse and aggravated kidnapping. Consequently, defendant's claim fails." *Koppa*, 184 Ill. 2d at 171-73.

See also *People v. Espinoza*, 184 Ill. 2d 252, 260 (1998) (where the supreme court reversed the trial court's dismissal of aggravated battery and armed violence counts on the ground that the penalties for those offenses violate the proportionate penalties clause of the Illinois Constitution).

We conclude that the holdings in *Koppa* and *Espinoza* apply to this case as well, and we thus reject defendant's constitutional challenge to the armed violence statute.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GARMAN, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent from that portion of the majority decision upholding the 15-year mandatory minimum sentence for armed violence.

Defendant was charged with armed violence, based upon a predicate offense of possession of a controlled substance (less than 15 grams of cocaine). Armed violence with a category I weapon such as a handgun is a Class X felony with a minimum term of imprisonment of 15 years. 720 ILCS 5/33A—3(a) (West 1996). Defendant compares that punishment with the punishment for other offenses where the weapon is actually used. For example, a person who commits aggravated battery with a firearm, who causes injury by the discharge of a firearm, where the victim is an ordinary citizen, is guilty of a Class X felony with a minimum term of imprisonment of six years. 720 ILCS 5/12—4.2(b) (West 1996); 730 ILCS 5/5—8—1(a)(4) (West 1996).

The question in this case is whether the proportionate penalties clause has been violated under the third test set out in *Koppa*, "where similar offenses are compared and conduct that creates a less serious threat to the public health and safety is punished more harshly." *Koppa*, 184 Ill. 2d at 164. Courts are especially deferential to the legislature when applying this test. *Koppa*, 184 Ill. 2d at 171. In *Koppa*, the court concluded that armed violence is not a less serious offense than aggravated criminal sexual abuse or aggravated kidnapping, because of the high risk of harm associated with the presence of a weapon. *Koppa*, 184 Ill. 2d at 172. The same cannot be said of this case. A person who carries a firearm while he possesses a controlled substance clearly is "a less serious threat to the public health and safety" than someone who actually uses that firearm to injure someone.

In *Espinoza*, where the defendant allegedly struck an individual with a bottle while in a public bar, the court applied the second test referenced in *Koppa*, i.e., "where identical offenses result in different sentences" (*Koppa*, 184 Ill. 2d at 164) (citing *Christy* and *Lewis*). See *Espinoza*, 184 Ill. 2d at 257, 259. The court concluded that armed violence predicated on aggravated battery (public way) committed with a category III dangerous weapon was not "identical" to ag-

gravated battery accompanied by one of several enumerated aggravating circumstances listed in subsection (b) of the aggravated battery statute (720 ILCS 5/12—4(b) (West 1994)). *Espinoza*, 184 Ill. 2d at 259. The case before us does not involve identical offenses, the second *Koppa* test, but similar offenses, the third *Koppa* test.

Defendant asks that we vacate the armed violence conviction and remand for sentencing on the unlawful possession count. I would, however, vacate the 15-year sentence and remand for sentencing as a Class X felony with a minimum of 6 years.