4-00-0871

NO. 4-00-0871

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellant,

v.

LYNETTE GHERNA,

Defendant-Appellee.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Vermilion County

  No. 99CF380

  Honorable

  Claudia S. Anderson,

  Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

In August 1999, the State charged defendant, Lynette Gherna, with possession of a controlled substance (720 ILCS 570/402(c) (West Supp. 1999)).  In June 2000, defendant filed a motion to suppress evidence and a motion to quash arrest and suppress statements.  In September 2000, after holding a hearing on the motions, the trial court granted defendant's motions.  The State brings this interlocutory appeal pursuant to Supreme Court Rule 604(a) (145 Ill. 2d R. 604(a)).  We reverse and remand.

I. BACKGROUND

On the night of August 26, 1999, Danville police officers Troy Wasson and Doug Smalley were on bicycle patrol in an area with high levels of drug activity when they noticed two people sitting in a pickup in a parking lot known for drug sales.  Both officers were wearing bicycle patrol uniforms with a badge, and the bicycles were marked "police."  As Officer Wasson approached the pickup, he noticed a bottle of beer between the driver and the passenger.  At the preliminary hearing, Officer Wasson did not mention the officers were patrolling a high drug-sale area but merely testified the officers approached the vehicle after noticing the beer and the age of the passenger.  The officers positioned themselves one on each side of the pickup.  Officer Wasson recognized defendant, who was sitting in the driver's seat, and later learned the person in the passenger's seat was defendant's 13-year-old daughter.  Officer Wasson asked defendant if he could see the bottle of beer, and defendant handed him the bottle.  After discovering the bottle was unopened, Officer Wasson returned the bottle of beer to defendant.  

Officer Wasson then asked defendant, who had become very nervous, what she was doing in the area.  As they spoke, Officer Wasson noticed an object underneath defendant's leg.  Upon being questioned about the object, defendant stated she did not know what it was and handed it to Officer Wasson.  The object was a LINK card with the name Lowell Briggs.  Officer Wasson asked her how she got the card, and she replied she was unaware of how the card got into her pickup.  Officer Wasson then asked defendant if it were a possibility someone had dropped other items in the truck, such as illegal drugs or narcotics or weapons.  Defendant responded it was a possibility and informed the officers they were free to look.  

Officer Wasson asked her to step out of the pickup, and defendant did so willingly.  Defendant's daughter remained in the pickup.  Officer Wasson asked defendant if she had anything on her person belonging to Lowell Briggs, and she stated, "No."  He then asked defendant if she had any illegal drugs on her or in her possession, and she replied she did not.  Officer Wasson paused for a few seconds and then defendant began emptying her pockets.  As she removed her hand from her front left shorts pocket, something fell to the ground.  Upon inspection, Officer Wasson believed the item was a clear plastic bag containing crack cocaine.  The substance field-tested positive for crack cocaine weighing approximately 4.1 grams. 

The officers arrested defendant and, after a September 2000 hearing, the trial court granted defendant's motion to suppress.  The trial court found:

"[T]he officers approached specifically as a result of their observation of the youth of the passenger and the suspicion that underage drinking was taking place.  This does not appear to be in the nature of a community[-] caretaking function; clearly the officers intended to investigate and determine whether underage drinking was occurring.  Therefore, the [c]ourt finds this circumstance to be more akin to a 'Terry stop [(
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968))],' in which the police have a reasonably articulable suspicion of criminal activity.  Following this reasoning, the [c]ourt relies upon the decision of the Supreme Court [of Illinois] in 
People v. Brownlee
, 186 Ill. 2d 501, ***, 713 N.E.2d 556 (1999), in finding that the [officers'] actions and the inquiry that followed amounted to an unlawful detention.  Once the officers found the beer to be unopened, the reason for their inquiry ended.  Upon asking the [d]efendant to leave the car so as to conduct a conversation outside the presence of her daughter, the [d]efendant was unlawfully detained."

This appeal followed.

II. ANALYSIS

A. Motion To Strike Portions of Reply Brief

Initially, we address defendant's motion to strike certain portions of the State's reply brief.  Specifically, defendant complains the State, in its reply brief, argues for the first time the police officers' actions constituted a proper 
Terry
 stop.  Defendant notes Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)) provides any points not argued in an appellant's opening brief "are waived and shall not be raised in the reply brief."

We conclude the State's argument in its reply brief was in response to arguments raised by defendant in her appellee brief.  Supreme Court Rule 341(g) (188 Ill. 2d R. 341(g)) provides an appellant may respond to arguments presented in the appellee's brief.  An appellee may argue any point supported by the record but an appellant is under no obligation to anticipate
 
every argument an appellee might raise and address it in its initial brief.  
Oliveira v. Amoco Oil Co.
, 311 Ill. App. 3d 886, 891, 726 N.E.2d 51, 56 (2000).  Therefore, defendant's motion to strike a portion of the State's reply brief is denied.

B. Standard of Review

The State argues the proper standard of review is 
de
 
novo
 because the issue raised on appeal is a question of law.  Defendant contends the trial court made factual findings in making its judgment and those findings should be reviewed under the manifestly erroneous standard.  Where both questions of law and fact are raised on appeal, we find the appropriate standard of review is the one set forth by the Supreme Court of Illinois in 
People v. Crane
, 195 Ill. 2d 42, 743 N.E.2d 555 (2001).  See O'Neill, 
High court climbs toward the light on proper review standards
, Chicago Daily Law Bulletin, February 2, 2001, at 5.  Thus
, we will not disturb any factual determinations made by the trial court and contained in the record, unless they are against the manifest weight of the evidence.  
Crane
, 195 Ill. 2d at 51, 743 N.E.2d at 562.  However, we will review 
de
 
novo
 the ultimate determination of whether the evidence should be suppressed
.  See 
Crane
, 195 Ill. 2d at 51, 743 N.E.2d at 562. 

C. Motion To Suppress

The Supreme Court of Illinois has divided police-citizen encounters into three tiers.  
The first tier involves an arrest and requires probable cause.  The second tier involves a 
Terry
 stop, which constitutes a brief seizure that requires a reasonable suspicion of criminal activity.  The third tier involves no coercion or detention and therefore does not involve a seizure.  
The third tier is commonly known as the community-caretaking or public-safety function.  
People v. Murray
, 137 Ill. 2d 382, 387, 560 N.E.2d 309, 311-12 (1990).  The State maintains the police officers' actions in this case fall under the community-caretaking function.  We agree.

A seizure occurs only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.  
Terry
, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16.  The court will look at the totality of the circumstances surrounding the incident to determine if "a reasonable person would have believed that he was not free to leave."  
United States v. Mendenhall
, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980).  
Mendenhall
 sets forth examples of circumstances that may suggest a seizure:  (1) the threatening presence of several police officers; (2) the display of an officer's weapon; (3) an officer physically touching the citizen; and (4) an officer's use of language or tone of voice indicating that the citizen's compliance with the request is compelled.  
Mendenhall
, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

None of those examples occurred in this case.  Only two officers were present, not several.  See 
Murray
, 137 Ill. 2d at 391, 560 N.E.2d at 313.  No weapons were displayed, and no testimony of a physical touching existed; nor was testimony presented showing either officer's use of language or tone indicated compliance with the officer's request was compelled.  

The facts do not support defendant's contention that a show of authority was made because of (1) the way the two officers positioned themselves next to the vehicle, (2) the scanning of the interior of the vehicle with a flashlight, and (3) the officer's asking defendant to exit the vehicle.  To determine if a seizure occurred, the objective test focuses on the coercive effect of police conduct as a whole, not on the particular details of that conduct in isolation.  
People v. Erby
, 213 Ill. App. 3d 657, 662, 572 N.E.2d 345, 348 (1991).  Shining a light into a parked vehicle is not a seizure absent coercion by police officers.  
Erby
, 213 Ill. App. 3d at 662, 572 N.E.2d at 348.  Moreover, asking someone to exit a vehicle does not constitute a show of authority unless the officers indicate compliance is compelled.  
Murray
, 137 Ill. 2d at 391, 560 N.E.2d at 313.  Defendant could have declined to exit the pickup or inquired why the officer made the request, and her failure to do so does not transform a consensual encounter into a seizure.  See 
Murray
, 137 Ill. 2d at 393, 560 N.E.2d at 314.  Further, the position of the officers alone does not constitute a seizure.  A police officer can approach a parked vehicle and ask the occupants questions without it constituting a seizure.  
Erby
, 213 Ill. App. 3d at 662, 572 N.E.2d at 348.    

Also, contrary to defendant's assertions, an officer's approach of a vehicle for the purposes of an investigation does not 
per
 
se
 create a 
Terry
 stop.  In 
People v. Smith
, 266 Ill. App. 3d 362, 365, 640 N.E.2d 647, 648-49 (1994), this court held a person is not seized when an officer simply approaches an individual and asks him questions if that person is willing to listen.  The Second District has held similarly.  See 
People v. Ciesler
, 304 Ill. App. 3d 465, 471-72, 710 N.E.2d 1270, 1275 (1999) (no violation of constitutional rights where a police officer merely approaches a person on the street or in another public place and puts questions to the person if he is willing to listen); 
Erby
, 213 Ill. App. 3d at 662, 572 N.E.2d at 348. 

Where nothing about an encounter with an officer is coercive or involves the use of physical force or a show of authority, a seizure has not occurred.  See 
People v. Green
, 301 Ill. App. 3d 767, 771, 704 N.E.2d 437, 439 (1998).  Based on 
the facts of this case, the officers did not seize defendant.  

Moreover, this case is distinguishable from 
Brownlee
, 186 Ill. 2d 501, 713 N.E.2d 556
.  In 
Brownlee
, 186 Ill. 2d at 519-20, 713 N.E.2d at 565, the officers executed a valid legal stop of the vehicle in which the defendant was riding before the illegal detention occurred.  After the valid traffic stop had concluded, the officers remained on each side of the vehicle and paused for a couple of minutes, saying nothing.  
Brownlee
, 186 Ill. 2d at 520, 713 N.E.2d at 565-66.  When one of the officers eventually asked for permission to search the car, the driver replied by asking whether he had a choice in the matter.  
Brownlee
, 186 Ill. 2d at 520, 713 N.E.2d at 566.  

Here, the officers never showed authority and thus never seized defendant.  Further, the officers continued to engage in conversation with defendant except the short pause after the officer asked her if she were carrying any contraband.  Unlike 
Brownlee
, a reasonable person in defendant's situation would have felt free to leave.  The facts of this case suggest a consensual encounter, and a person is not seized when she voluntarily cooperates with the police (
Erby
, 213 Ill. App. 3d at 662, 572 N.E.2d at 348).

III. CONCLUSION

Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

MYERSCOUGH, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I agree with the proposition that "[m]erely approaching a parked vehicle and asking questions of the occupants does not constitute a seizure."  
Erby
, 213 Ill. App. 3d at 662, 572 N.E.2d at 348.  However, where the officer approaches the vehicle because he has concerns about criminal activity, the officer is not "merely approaching the vehicle."  "The 'community[-]caretaking' function must be completely divorced from any initial suspicion of criminal activity."  
People v. Simac
, 321 Ill. App. 3d 1001, 1004, 748 N.E.2d 798, 800 (2001).  The community-caretaking function is "'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'"  
Murray
, 137 Ill. 2d at 388, 560 N.E.2d at 312, quoting 
Cady v. Dombrowski
, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 715, 93 S. Ct. 2523, 2528 (1973).

Did the officers in this case approach the vehicle to admire its tires, to ask directions, or to make small talk with the occupants?  No.  The trial court made a finding of fact:  "the officers approached specifically as a result of their observation of the youth of the passenger and the suspicion that underage drinking was taking place.  This does not appear to be in the nature of a community[-]caretaking function; clearly the officers intended to investigate and determine whether underage drinking was occurring."  

The community-caretaking function is not a fall-back position when the evidence is insufficient to sustain a 
Terry
 stop.  Rather, the concept recognizes that just as ordinary citizens sometimes make contact with individuals who turn out to be violating the law, police officers may do the same.  Police officers have duties other than criminal investigation, and sometimes the performance of those duties will lead to a chance encounter with a potential criminal.  The fact that the officer did not have probable cause or reasonably articulable suspicion to justify the encounter is not a problem, because the encounter was a 
chance
 encounter.  That argument does not work in this case.