Docket No. 92554–Agenda 9–May 2002.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LYNETTE S. GHERNA, Appellant.

Opinion filed January 24, 2003.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

On August 26, 1999, officers approached a vehicle driven by defendant, Lynette Gherna, observed certain items in the vehicle, asked defendant to exit the vehicle in order to conduct a search, and later arrested and charged defendant with one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2000)). Prior to trial, defendant filed a motion to suppress evidence. After conducting a hearing, the circuit court of Vermilion County granted defendant’s suppression motion, rejecting the State’s contention that the officers’ encounter with defendant was entirely consensual. The State filed a certificate of substantial impairment and appealed the circuit court’s ruling pursuant to Supreme Court Rule 604(a) (188 Ill. 2d R. 604(a)). With one justice dissenting, a panel of the appellate court reversed the judgment of the circuit court and remanded this cause for further proceedings. 325 Ill. App. 3d 157. We allowed defendant’s petition for leave to appeal pursuant to our Rule 315 (177 Ill. 2d R. 315). For the reasons that follow, we reverse the judgment of the appellate court.

BACKGROUND

Defendant was arrested by Danville police officers on August 26, 1999, and charged with one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2000)). Approximately one month after defendant’s arrest, on September 23, 1999, the circuit court held a preliminary hearing on defendant’s motion to suppress the evidence seized by the police officers when defendant was arrested. Danville police officer Troy Wasson, who was the only witness to testify during the hearing, stated that at 9 p.m. on August 26, he and his partner, Officer Doug Smalley, were on bicycle patrol. At that time the officers observed two females sitting in a pickup truck parked in an apartment complex parking lot. Officer Wasson testified that as he and his partner were riding by the truck, he “observed a bottle of beer in the–sitting in a cup holder console–or in the center console between the two girls.” Officer Wasson stated that because the passenger in the truck “appeared to me to be pretty young,” he and his partner suspected possible underage drinking and therefore “stopped to identify both the people inside the vehicle.” The officers determined that defendant, the driver of the truck, was over the age of 21, and that the passenger in the vehicle was defendant’s 13-year-old daughter. The officers also examined the bottle of beer and determined that the bottle was unopened and in its original container.

Officer Wasson further testified that after ascertaining that no underage drinking had occurred, he began “casually talking” with defendant. Officer Wasson stated that defendant became “very nervous” as they conversed. Officer Wasson testified that it was during this conversation that he observed an item resembling a credit card located underneath defendant’s left thigh as she was sitting inside the truck. Wasson stated that he asked defendant about the card, that defendant showed the card to him, and that Wasson saw that it was an Illinois Link card in the name of Lowell Briggs. Officer Wasson then asked defendant where she had obtained the card. Defendant replied that she did not know how the card got into her vehicle and that possibly someone had dropped it there when the police arrived. Officer Wasson testified that “[a]t that point I asked [defendant] to exit the car so I could speak with her in private, not around her 13-year-old daughter.” According to Officer Wasson, he and defendant “then stepped next to the vehicle,” and he asked defendant if there were any other items in the car that could belong to Lowell Briggs and of which defendant was unaware. According to Wasson, defendant stated that the officers were “free to look.” Officer Wasson testified that he and his partner did not search the vehicle at that time because Wasson “was still talking with [defendant].” Wasson then asked defendant if she “had anything on her that belonged to Lowell Briggs,” including any illegal drugs or narcotics, to which defendant replied in the negative. Officer Wasson testified that “[a]t that point I paused,” and defendant then began emptying her front pockets. As defendant was removing various items from her pockets, a clear plastic baggie fell to the ground that contained several yellowish-white rocks, which subsequently field-tested positive for cocaine. Officer Wasson stated that defendant was then placed under arrest.

Prior to trial, defendant filed with the circuit court a motion to suppress evidence, alleging that she was searched without a warrant and without probable cause in violation of the fourth amendment of the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6). Specifically, defendant asserted that the officers’ approach to her vehicle amounted to a 
Terry
 stop to investigate whether minors were unlawfully consuming alcohol. See 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Defendant argued that after the officers determined that no underage drinking or open alcohol violation had taken place, the officers’ investigation should have ceased. Relying upon this court’s decision in 
People v. Brownlee
, 186 Ill. 2d 501 (1999), defendant concluded that her continued detention by the officers after the basis for the 
Terry
 stop was dispelled constituted an unlawful seizure.

On September 7, 2000, approximately one year after defendant’s arrest, the circuit court conducted a hearing on defendant’s suppression motion. Again, Officer Wasson was the only witness to testify during the proceedings. Although Officer Wasson’s general recounting of the events leading up to defendant’s arrest was similar to the testimony he gave during the preliminary hearing, Officer Wasson provided additional details not mentioned during his earlier testimony. Officer Wasson stated that on the evening of defendant’s arrest, both he and his partner were on bicycle patrol and were outfitted in Danville police bicycle uniforms, which consisted of a shirt with a badge and short trousers, and were carrying weapons and other police gear, such as radios, flashlights, and handcuffs. Although Officer Wasson stated, as he had during the preliminary hearing, that his encounter with defendant began when he and his partner observed two individuals sitting inside a truck parked in an apartment complex parking lot, Officer Wasson added that he and his partner were patrolling the area of the parking lot “due to the high levels of drug activity” there. Officer Wasson described the parking lot as “what the city refers to as a stop area *** a high drug and crime area[ ] *** [where officers are assigned] to help stop the drug flow or any other criminal activity that’s going on in the area.” Officer Wasson repeated his preliminary hearing testimony that he observed a bottle of beer in the console between the driver and the passenger, and it was the presence of the beer bottle that caused the officers to “pay[ ] notice to the age of the occupants.” Officer Wasson stated that during his encounter with defendant, he was positioned with his bicycle at the driver’s side of defendant’s “full size” truck, while Officer Smalley was positioned with his bicycle at the vehicle’s passenger side. According to Wasson, although he recognized defendant, her passenger appeared to be very young, “under 21.” Officer Wasson testified that he wanted to examine the bottle of beer because he suspected that underage drinking may have taken place. Defendant gave the bottle to Officer Wasson, and, upon his examination, it appeared unopened and in its original container. Officer Wasson handed the bottle back to defendant after determining that underage drinking had not occurred. Although Officer Wasson testified, as he did at the preliminary hearing, that he then “engag[ed] in conversation with [defendant],” he added that he questioned defendant with respect to her presence in the area, and that while he was conversing with her, he was “peering into the car” with his flashlight and observed the card under defendant’s left thigh. Officer Wasson asked defendant what it was and she stated that she did not know and reached down and handed it to him. He then asked defendant if there was anything else in the truck that she was not aware of, such as illegal drugs or weapons, and she stated that they were “free to look.” Officer Wasson testified that he “asked [defendant] to go ahead and exit the pickup truck,” and defendant complied. Officer Wasson stated that he “request[ed]” defendant to exit the vehicle because she had told them that they were free to look. On cross-examination, Officer Wasson acknowledged that during the preliminary hearing he had testified that the reason he asked defendant to exit the vehicle was so that he could speak to her more privately away from her daughter. Wasson then stated that he asked defendant to exit the vehicle for both purposes, and that he had intended to ask defendant “questions about drug use, drug sales, the use of illegal drugs and narcotics” and that such questions would be inappropriate for a 13-year-old to hear. According to Officer Wasson, he and defendant walked towards the front of the truck and he continued to engage her in conversation, asking defendant if she had any illegal drugs in her possession. When defendant replied in the negative, Officer Wasson testified, “I paused for a few moments; and while I was pausing [defendant] began to empty her pockets.” Officer Wasson referred to the police report and stated that the pause was of approximately 10 seconds in duration. As defendant was emptying her pockets, a small baggie containing what later was determined to be crack cocaine fell to the ground. Defendant was arrested. A subsequent search of defendant’s vehicle yielded no contraband.

On September 26, 2000, the circuit court entered a written order granting defendant’s motion to suppress. In the order, the circuit court judge rejected the State’s contention that the officers’ encounter with defendant was completely consensual and, therefore, did not implicate the fourth amendment. The circuit court found that in the case at bar, “the officers approached specifically as a result of their observation of the youth of the passenger and the suspicion that underage drinking was taking place. This does not appear to be in the nature of a community caretaking function; clearly the officers intended to investigate and determine whether underage drinking was occurring. Therefore, the court finds this circumstance to be more akin to a ‘
Terry
 stop,’ in which the police have a reasonably articulable suspicion of criminal activity.” The circuit court then relied upon the reasoning in this court’s decision in 
People v. Brownlee
, 186 Ill. 2d 501 (1999), and held that the officers’ actions and the inquiry that followed amounted to an unlawful detention. Specifically, the circuit court determined that “[o]nce the officers found the beer to be unopened, the reason for their inquiry ended. Upon asking the defendant to leave the car so as to conduct a conversation outside the presence of her daughter, the defendant was unlawfully detained. The court rejects the State’s position that this was a mere request because a person in the defendant’s position could reasonably believe that upon being asked to step away from the car, she was not free to leave. Accepting the testimony that the defendant thereafter gave her consent to search, the court finds such consent was tainted as a product of that unlawful detention.”

In its written opinion, the circuit court also “took notice of the transcript of the preliminary hearing, which did not refer in any way to the area being targeted for drug activity or otherwise indicating the officer’s original suspicion to be anything other than underage drinking.”

A majority of the appellate court reversed the judgment of the circuit court and remanded the cause for further proceedings. 325 Ill. App. 3d 157. The appellate court majority determined that the encounter between defendant and the officers was entirely consensual and, accordingly, defendant’s rights under the fourth amendment were not implicated. In finding that defendant had not been seized at any time, the appellate majority relied upon the United States Supreme Court’s decision in 
United States v. Mendenhall
, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980), where the Court listed several examples of circumstances that could suggest that a seizure had occurred, including the presence of more than one officer, the display of a weapon by an officer, an officer’s physical touching of a citizen, or the officer’s use of language or tone of voice indicating that the citizen’s compliance with the request was compelled. The appellate majority found that, in the matter at bar, none of the circumstances described in 
Mendenhall
 were present to establish that a show of authority was made by the officers against defendant. Thus, based upon the totality of circumstances surrounding the encounter at bar, the majority held that defendant was not seized by the officers because a reasonable person would have believed that she was free to leave at any time. In addition, the appellate majority rejected defendant’s contention that this encounter began as a 
Terry 
stop, and held that “an officer’s approach of a vehicle for the purposes of an investigation does not 
per se
 create a 
Terry
 stop.” 325 Ill. App. 3d at 162. The appellate majority therefore concluded that because the contact between defendant and the police officers was completely consensual, and because defendant, therefore, had not been seized, the entire encounter required neither probable cause nor reasonable suspicion.

 In a dissenting opinion, Justice Cook stated that although he agreed with the majority’s proposition that merely approaching a parked vehicle and asking questions of the occupants does not constitute a seizure, he emphasized that “where the officer approaches the vehicle because he has concerns about criminal activity, the officer is not ‘merely approaching the vehicle.’ ” 325 Ill. App. 3d at 163 (Cook, J., dissenting). The dissenting justice noted that the trial court made a specific finding of fact that the officers approached defendant’s vehicle as a result of their observation of the apparent youth of the passenger and the suspicion that underage drinking was taking place. The dissenting justice observed that because the community caretaking function is “ ‘ “totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute” ’ ” (325 Ill. App. 3d at 163 (Cook, J., dissenting), quoting 
People v. Murray
, 137 Ill. 2d 382, 388 (1990), quoting 
Cady v. Dombrowski
, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 715, 93 S. Ct. 2523, 2528 (1973)), community caretaking “is not a fall-back position when the evidence is insufficient to sustain a 
Terry
 stop.” 325 Ill. App. 3d at 163-64 (Cook, J., dissenting).

We granted defendant’s petition for leave to appeal under our Rule 315 (177 Ill. 2d R. 315).

ANALYSIS

Defendant contends that the appellate court erred in reversing the circuit court’s ruling granting her motion to suppress. Specifically, defendant argues that the circuit court correctly found that the police initiated the encounter with her in order to investigate their suspicions that underage drinking was occurring in defendant’s truck. Defendant further asserts that the circuit court correctly determined that the officers’ actions constituted an investigatory detention under 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and that once the officers concluded that no criminal violation had occurred, the reason for the stop had come to an end and that her continued detention by the officers constituted an unreasonable seizure that violated her constitutional rights and tainted her subsequent consent to search. In sum, defendant argues, the appellate court erred in holding that her entire encounter with Officers Wasson and Smalley was consensual and that defendant had at no time been seized. We agree.

In reviewing a circuit court’s ruling on a motion to suppress, mixed questions of law and fact are presented. Factual findings made by the circuit court will be upheld on review unless such findings are against the manifest weight of the evidence. 
People v. Crane
, 195 Ill. 2d 42, 51 (2001). This deferential standard of review is premised upon the reality that the circuit court is in “a superior position to determine and weigh the credibility of the witnesses, observe the witnesses’ demeanor, and resolve conflicts in the witnesses’ testimony.” 
People v. Gonzalez
, 184 Ill. 2d 402, 412 (1998). If we accept the findings of fact made by the circuit court, we then review 
de novo
 whether suppression is warranted under those facts. 
Gonzalez
, 184 Ill. 2d at 412. A court of review “remains free to engage in its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted.” 
Crane
, 195 Ill. 2d at 51.

The fourth amendment to the United States Constitution guarantees the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const., amend. IV; accord Ill. Const. 1970, art. I, sec. 6; see 
People v. Anthony
, 198 Ill. 2d 194, 201 (2001) (“ ‘This court has construed the search and seizure language found in section 6 in a manner that is consistent with the Supreme Court’s fourth amendment jurisprudence’ ”), quoting 
Fink v. Ryan
, 174 Ill. 2d 302, 314 (1996). Because “the Fourth Amendment protects people, not places” (
Katz v. United States
, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511 (1967)), “wherever an individual may harbor a reasonable ‘expectation of privacy’ [citation], he is entitled to be free from unreasonable government intrusion” (
Terry v. Ohio
, 392 U.S. 1, 9, 20 L. Ed. 2d 889, 899, 88 S. Ct. 1868, 1873, (1968)). Accordingly, the parameters of this right are shaped by the context in which it is asserted, for “what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.” 
Elkins v. United States
, 364 U.S. 206, 222, 4 L. Ed. 2d 1669, 1680, 80 S. Ct. 1437, 1446 (1960).

This court has previously observed that “[t]here are, theoretically, three tiers of police-citizen encounters” (
People v. Murray
, 137 Ill. 2d 382, 387 (1990)) that do not constitute an unreasonable seizure. The first tier involves the arrest of a citizen, which must be supported by probable cause. 
Murray
, 137 Ill. 2d at 387. Probable cause exists when the facts and circumstances known by the arresting officer are sufficient to warrant a reasonable person’s belief that the arrested individual has committed an offense. 
People v. Tisler
, 103 Ill. 2d 226 (1984). The next tier of encounters between police and citizens involves a temporary investigative seizure conducted under the standards set forth by the United States Supreme Court in 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). 
Murray
, 137 Ill. 2d at 387. In 
Terry
, the Supreme Court held that an officer may, within the parameters of the fourth amendment, conduct a brief, investigatory stop of a citizen when the officer has a reasonable, articulable suspicion of criminal activity, and such suspicion amounts to more than a mere “hunch.” 
Terry
, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. The final tier of police-citizen encounters involves those encounters which are consensual. The encounters in this tier “involve[ ] no coercion or detention and therefore do[ ] not involve a seizure.” 
Murray
, 137 Ill. 2d at 387. Accordingly, consensual encounters do not implicate the fourth amendment.

In the matter at bar, the appellate majority below determined that the entire encounter between the officers and defendant was completely consensual. In the view of the appellate court, the protections of the fourth amendment are not implicated in the matter at bar because “the officers never showed authority and thus never seized defendant.” 325 Ill. App. 3d at 163. In its brief to this court, the State mirrors the reasoning of the appellate majority, and contends that the officers did not seize defendant, that the contact was entirely consensual, and that a reasonable person in defendant’s position would have felt free to leave the scene at any time. The State concludes, therefore, that the contact between defendant and the officers does not implicate the fourth amendment. We disagree.

For purposes of the fourth amendment, an individual is “seized” when an officer “ ‘by means of physical force or show of authority, has in some way restrained the liberty of a citizen.’ ” 
Florida v. Bostick
, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991), quoting 
Terry
, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16. It is well settled that a seizure does not occur simply because a law enforcement officer approaches an individual and puts questions to that person if he or she is willing to listen. 
United States v. Drayton
, 536 U.S. ___, ___, 153 L. Ed. 2d 242, 251, 122 S. Ct. 2105, 2110 (2002); 
Florida v. Royer
, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983) (plurality op.). “So long as a reasonable person would feel free ‘to disregard the police and go about his business,’ [citation], the encounter is consensual and no reasonable suspicion is required.” 
Bostick
, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386, quoting 
California v. Hodari D.
, 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698, 111 S. Ct. 1547, 1552 (1991); see also 
Michigan v. Chesternut
, 486 U.S. 567, 569, 100 L. Ed. 2d 565, 569, 108 S. Ct. 1975, 1977 (1988). However, when, taking into account “ ‘all the circumstances surrounding the incident’ ” (
Immigration & Naturalization Service v. Delgado
, 466 U.S. 210, 215, 80 L. Ed. 2d 247, 255, 104 S. Ct. 1758, 1762 (1984), quoting 
United States v. Mendenhall
, 446 U.S. 544, 554, 64 L. Ed. 3d 497, 509, 100 S. Ct. 1870, 1877 (1980)), the conduct of the police would lead a reasonable innocent person under identical circumstances to believe that he or she was not “free to decline the officers’ requests or otherwise terminate the encounter” (
Bostick
, 501 U.S. at 436, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387), that person is seized. Accordingly, this analysis hinges on an objective evaluation of the police conduct and not upon the subjective perception of the individual approached. 
Hodari D.
, 499 U.S. at 628, 113 L. Ed. 2d at 698, 111 S. Ct. at 1551.

Applying the above principles to the facts before us, we conclude that the appellate court erred in holding that defendant’s liberty was not restrained during her encounter with the Danville officers. As stated, an individual is not seized for fourth amendment purposes when police ask questions of that individual, including a request for identification, so long as the officers do not convey by their words or actions to the person being questioned that compliance with their requests is required. See 
Bostick
, 501 U.S. at 434-35, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386. However, a consensual encounter will lose its consensual nature if law enforcement officers convey a message, by means of physical force or show of authority, that induces the individual to cooperate. 
Bostick
, 501 U.S. at 434-35, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386; 
Mendenhall
, 446 U.S. at 554-56, 64 L. Ed. 2d at 509-10, 100 S. Ct. at 1877-78.

In the matter at bar, the record reveals that, during the initial encounter between the Danville officers and defendant, more than mere consensual questioning took place. Defendant, while seated in her vehicle with her 13-year-old daughter, was confronted by two uniformed officers riding bicycles clearly marked “police.” We reject the State’s assertion that the presence of the officers in the instant matter was “less threatening” because the officers approached defendant on bicycles and were outfitted in short-sleeved shirts and short trousers. The testimony of Officer Wasson established that the officers displayed police badges on their shirts, and that they were equipped with a full complement of police gear, including weapons, radios, handcuffs and flashlights. The fact that the officers were assigned to bicycle patrol did not diminish their apparent authority as law enforcement personnel. Officer Wasson positioned himself and his bicycle at the driver’s door, while Officer Smalley positioned himself and his bicycle at the passenger’s door. Upon taking these positions, the officers proceeded to identify the passengers. Although the officers determined that defendant was over the age of 21, Officer Wasson testified that defendant’s passenger “appeared to be young *** under 21.” According to his testimony, Officer Wasson then asked defendant to hand him the bottle of beer because he wanted to ascertain if any underage drinking had taken place. Defendant gave the bottle to Officer Wasson, who determined that it was unopened and in its original container. Officer Wasson then handed the bottle back to defendant.

Under the totality of the circumstances at bar, we conclude that the presence and positioning of the officers with their bicycles on either side of defendant’s vehicle, combined with Officer Wasson’s request to defendant to produce the bottle of beer for examination after questioning defendant and her daughter about their identities, constituted an official show of authority to which a reasonable innocent person would feel compelled to submit. At the time Officer Wasson asked defendant to hand him the bottle of beer, a reasonable innocent person in defendant’s position would not have felt “free to decline the officers’ requests or otherwise terminate the encounter.” 
Bostick
, 501 U.S. at 436, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387. At that instant, defendant’s movement was restricted: the positioning of the officers and their bicycles prevented defendant from either exiting the vehicle or driving the vehicle away from the scene. This blocked movement, combined with the request to examine the bottle of beer on the heels of other questioning, would “ ‘have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.’ ” 
Bostick
, 501 U.S. at 437, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387, quoting 
Chesternut
, 486 U.S. at 569, 100 L. Ed. 2d at 569, 108 S. Ct. at 1977; see also 
Hodari D.
, 499 U.S. at 628, 113 L. Ed. 2d at 698, 111 S. Ct. at 1552; 
cf
, 
People v. Brownlee
, 186 Ill. 2d 501, 520 (1999) (“officers restrained the movements of [a] car’s occupants by their show of authority”). Accordingly, we conclude that defendant was seized.

Our inquiry, therefore, turns to whether this seizure was reasonable under the circumstances presented, as only those seizures which are “unreasonable” violate the fourth amendment. U.S. Const., amend. IV, accord Ill. Const. 1970, art. I, §6. We hold that the seizure of defendant during her initial encounter with the Danville police was reasonable under the standards set forth in 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In 
Terry
, the Supreme Court recognized that effective crime prevention and detection requires that an officer be allowed to briefly detain and question individuals in order to investigate possible criminal behavior, even though there is no probable cause to support an arrest. To justify such a brief investigative seizure, the officer’s decision must be based on “specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.” 
Terry
, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. An officer’s decision to engage in a brief 
Terry
 investigative detention cannot be justified, however, on the basis of “unparticularized suspicion” or on a “hunch.” 
Terry
, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.

The 
Terry
 Court established a dual inquiry for determining whether an officer’s investigative detention is reasonable: (1) “whether the officer’s action was justified at its inception” and (2) “whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” 
Terry
, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. In 
Florida v. Royer
, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983), the Supreme Court elaborated on the principles applicable to the second part of the 
Terry
 reasonableness inquiry. In 
Royer
, the Court emphasized that, under 
Terry
, “an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.” 
Royer
, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1325 (plurality op.). In addition, the 
Royer
 Court held that the State bears the burden of showing that a seizure based on “reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.” 
Royer
, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1326 (plurality op.). Finally, 
Royer
 held that the where an officer’s confinement of a person goes beyond the limited restraint of a 
Terry
 investigative stop, a subsequent consent to search may be found to be tainted by the illegality. 
Royer
, 460 U.S. at 501, 75 L. Ed. 2d at 238-39, 103 S. Ct. at 1326 (plurality op.).

In the matter at bar, the circuit court held, based upon its factual finding that the officers had a “reasonably articulable”suspicion of underage drinking, that their initial encounter with defendant constituted a valid 
Terry
 investigative detention. We agree. The record demonstrates that the conduct of the officers during their initial encounter with defendant comported with the precepts of the fourth amendment. As found by the circuit court, the officers possessed a reasonable and articulable suspicion, based upon their observation of the bottle of beer and of a passenger who appeared to be younger than 21, that underage drinking may have been taking place. Accordingly, the officers had a justifiable basis to briefly detain and question defendant about the bottle of beer and to ascertain the ages of the occupants of the vehicle. See 
Terry
, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. Indeed, in her brief to this court, defendant concedes that her initial encounter with the officers was proper under 
Terry
.

Defendant contends, however, that the officers exceeded the scope of their 
Terry
 authority and therefore violated her rights under the fourth amendment by unreasonably detaining her after the officers had satisfied themselves that the criminal activity which originally justified the investigative detention–the possible underage consumption of alcohol–had not occurred. The State, in its submissions to this court, does not attempt to justify any portion of the encounter between the Danville officers and defendant as a 
Terry
 investigative detention. Rather, as noted, the State advances the argument, which we have rejected above, that defendant was not seized by the officers at any time prior to her arrest.

In the case at bar, the circuit court agreed with defendant’s position. The circuit court held that “[o]nce the officers found the beer to be unopened, the reason for their [
Terry
] inquiry ended.” The circuit court relied upon our decision in 
Brownlee 
and held that “[u]pon asking the defendant to leave the car so as to conduct a conversation outside the presence of her daughter, the defendant was unlawfully detained.” In the course of its ruling, the circuit court also rejected the State’s position that the officers merely requested that defendant exit the vehicle, and made the explicit factual finding that “a person in defendant’s position could reasonably believe that upon being asked to step away from the car, she was not free to leave.” The circuit court further stated that, “[a]ccepting the testimony that the defendant thereafter gave her consent to search, the court finds such consent was tainted as a product of that unlawful detention.” We agree with the circuit court.

We find that the result in the matter at bar is controlled by our decision in 
People v. Brownlee
, 186 Ill. 2d 501 (1999), a case which is factually analogous and in which we upheld the circuit court’s suppression of evidence which was obtained after a passenger was detained without a reasonable suspicion of criminal activity. In 
Brownlee
, two officers conducted a traffic stop of a vehicle that contained four occupants. The defendant was seated in the backseat. The officers obtained identification from each occupant and checked for outstanding warrants. After determining that none of the occupants had an outstanding warrant, the officers decided not to issue any traffic citations and reapproached the car. However, upon returning to the driver his license and insurance card, the officers paused for a time and then requested that the driver consent to a search of the vehicle. When the driver inquired whether he had a choice, one of the officers replied in the affirmative and stated that he was “asking” that the driver allow the search. The driver then exited the vehicle and said, “ ‘Okay you can search.’ ” 
Brownlee
, 186 Ill. 2d at 506. After the passengers were ordered out of the car, a search revealed the presence of marijuana in the vehicle. All four individuals were arrested and, as a result of a search incident to her arrest, cocaine was discovered on the defendant’s person. The trial court granted the defendant’s suppression motion and the State appealed. We affirmed the trial court’s suppression of the evidence.

In arriving at this conclusion, we reasoned that although the original traffic stop was valid under 
Terry
, the continued detention of the defendant was unlawful because the officers did not have a reasonable suspicion of criminal conduct. 
Brownlee
, 186 Ill. 2d at 521. We held that, in view of all the facts surrounding the incident, a reasonable person would not have felt free to leave, as “the officers restrained the movements of the car’s occupants by their show of authority.” 
Brownlee
, 186 Ill. 2d at 520. We explained:

“There was no dispute in this appeal that the driver had no choice but to submit to the officers’ lawful authority while they conducted the traffic stop and related investigation. This traffic stop concluded when, with [one officer] standing on the driver’s side of the car, and [the other officer] standing on the passenger side of the car, [the officers] returned to the driver his license and insurance card, and explained that no citations would be issued. According to [one of the officer’s] own testimony, he then ‘paused’ for ‘a couple [of] minutes.’ The officers apparently did not move from their stations at the car’s doors during this two-minute time period, but rather stood there, saying nothing. Given these circumstances, we can find no fault with the circuit court’s conclusion that the officers’ actions constituted a show of authority such that a reasonable person would conclude that he or she was not free to leave.” 
Brownlee
, 186 Ill. 2d at 520.

Just as in 
Brownlee
, the initial encounter between the Danville officers and defendant was reasonable under 
Terry
. However, once the officers’ reasonable suspicions regarding underage drinking had been allayed, the specific reason for the 
Terry
 investigative detention had concluded. The record reflects, however, that the officers continued to detain defendant. Once the officers concluded their initial encounter with defendant by returning the bottle of beer, the officers did not indicate in word or manner that defendant was free to leave, even though the officers harbored no reasonable suspicion of any other criminal conduct on defendant’s part. To the contrary, the officers remained stationed on both sides of defendant’s truck, with their bicycles positioned next to the vehicle’s doors, and proceeded to question defendant about her reasons for being in the area. In addition, while questioning defendant, Officer Wasson testified that he was “peering into” defendant’s truck and using a flashlight to illuminate the interior of the passenger compartment. It was during this time that Officer Wasson observed an object resembling a credit card located under defendant’s left thigh. Defendant was then asked by Officer Wasson to exit the vehicle, all in the absence of any reasonable, articulable suspicion that would warrant the continued detention.

We agree with the circuit court’s finding that, under the totality of circumstances surrounding this incident, defendant remained seized within the meaning of the fourth amendment, as a reasonable innocent person in defendant’s position would believe that she neither was free to “ ‘disregard the police and go about [her] business’ ” (
Bostick
, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386, quoting 
Hodari D.
, 499 U.S. at 628, 113 L. Ed. 2d at 698, 111 S. Ct. at 1552) nor was “free to decline the officers’ requests or otherwise terminate the encounter” (
Bostick
, 501 U.S. at 436, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387). Under the facts before us, we conclude that the show of authority by the officers in the case at bar is analogous to the show of authority by the officers in 
Brownlee
, and that the continued detention of defendant was not supported by any reasonable, articulable suspicion of criminal activity. In turn, the officers’ unreasonable detention of defendant culminated in defendant’s arrest. We conclude, as we did in 
Brownlee
, that the continued detention of defendant constituted an unreasonable seizure that violated her fourth amendment rights. The appellate court majority erred in arriving at a contrary result.

An individual cannot be seized absent reasonable, objective grounds for doing so. 
Mendenhall
, 446 U.S. at 556, 64 L. Ed. 2d at 510-11, 100 S. Ct. at 1878. It is the State’s burden to establish that an investigative detention based on reasonable suspicion was sufficiently limited in duration and scope to satisfy the conditions of a 
Terry
 investigative seizure. 
Brownlee
, 186 Ill. 2d at 521. Just as in 
Brownlee
, the State has not attempted to “show that the officers’ continued detention of the car was in any way reasonable or objectively justified.” 
Brownlee
, 186 Ill. 2d at 521. Also, just as in 
Brownlee
, the State at bar does not “attempt to show that the officers’ detention was sufficiently limited in scope or duration to satisfy the conditions of a 
Terry
 investigative seizure.” 
Brownlee
, 186 Ill. 2d at 521. We conclude that the circuit court did not err in holding that the officers’ continued detention of defendant was unconstitutional because it was not reasonable. See 
Brownlee
, 186 Ill. 2d at 521.

Finally, as stated, where an illegal detention occurs, “a subsequent consent to search may be found to have been tainted by the illegality.” 
Brownlee
, 186 Ill. 2d at 521. We hold that the circuit court did not err in determining that the evidence against defendant must be suppressed because her consent to search was tainted as the product of the officers’ illegal detention. See
 Brownlee
, 186 Ill. 2d at 521.

CONCLUSION

For the reasons set forth above, the judgment of the appellate court is reversed. The judgment of the circuit court is affirmed.

Appellate court judgment reversed;

circuit court judgment affirmed.

JUSTICES GARMAN and RARICK took no part in the consideration or decision of this case.