# Illinois Official Reports

## Appellate Court

---

**People v. Follis, 2014 IL App (5th) 130288**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROSS D. FOLLIS, JR., Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-13-0288 |
| Filed | June 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order granting defendant's motion to suppress his confession to a charge of predatory criminal sexual assault of a child was affirmed where the record showed that defendant, an 18-year-old male with a diminished mental capacity who left school in the tenth grade, knew he was being investigated for the sexual abuse of the daughter of his father's girlfriend when two armed officers took him to the police station and interviewed him without any family members present until he made incriminating statements, and the trial court's findings that defendant was in custody at the time and did not knowingly and intelligently waive his *Miranda* rights were not against the manifest weight of the evidence, especially when both experts who examined defendant concluded that he could not have knowingly and intelligently waived his rights. |
| Decision Under Review | Appeal from the Circuit Court of Washington County, No. 12-CF-72; the Hon. Daniel J. Emge, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Heath Hooks, State's Attorney, of Nashville (Patrick Delfino, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
|---|---|
| | Michael J. Pelletier, Ellen J. Curry, and Amanda R. Horner, all of State Appellate Defender's Office, of Mt. Vernon, for appellee. |
| Panel | JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion. Justices Chapman and Cates concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State appeals from an order of the circuit court of Washington County granting the motion to suppress filed by defendant, Ross D. Follis, Jr. The issue raised in this appeal is whether the trial court erred in concluding that defendant was in custody at the time of the interview. We affirm.

¶ 2                                    FACTS

¶ 3    Defendant, age 18, was charged by information with one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2010)) for allegedly committing an act of sexual penetration on the victim, who was 3 years of age, by inserting his finger in the victim's vagina. He was also charged with one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2010)) for allegedly committing an act of sexual conduct with the same victim by knowingly touching the victim's vagina with his fingers. Defendant filed a motion to suppress his confession. The State filed a response, arguing (1) defendant was not in custody, and (2) even if defendant was in custody, his confession was knowing and voluntary.

¶ 4    A hearing was held on the motion to suppress during which Brock Styninger, a Nashville police officer, testified that he spoke briefly to defendant's father on December 6, 2012, and told him there was an allegation of sexual assault against defendant. A month earlier, the police asked defendant to leave his home so that the Department of Children and Family Services (Department) could conduct an interview about allegations of sexual abuse made by the victim. On December 6, defendant's father said defendant was not home, but was out walking the dog. Styninger and another officer, Officer Reel, left, but came back 10 to 15 minutes later, at which time defendant was available. Defendant told the police that he initially saw the squad car pull up to his house and he ran away, but upon reflection he realized it was better to come back and talk to the police. The officers asked defendant to come to the police station for questioning. Defendant agreed by telling the police, "[L]et's just get this shit over with."

- 2 -

¶ 5    According to Styninger, defendant was not in custody and was never told he was under arrest. Defendant was not handcuffed, but he did ride in the back of a patrol car to the station. Defendant was allowed to smoke a cigarette before he was interviewed, was allowed to use the restroom, was given a drink of water, and was given a cigarette break during the interview. The interview was videotaped, but there are audio problems with the videotape.

¶ 6    Even though the police officers said defendant was not in custody, Styninger read defendant his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)) from a police-department-issued form. Defendant nodded his head a few times, which Styninger interpreted as meaning that defendant understood his rights. Defendant initialed the individual paragraphs and signed the form. The interview was conducted in a room approximately 10 by 12 feet with the door closed, except when Officer Reel would occasionally leave.

¶ 7    The alleged victim was his father's girlfriend's daughter. During the interview, defendant admitted that he touched the victim's vagina and the victim touched his penis. Defendant never admitted inserting a finger or anything inside the victim. Defendant agreed to make a statement. Defendant told Styninger what occurred and Styninger wrote it down. Defendant then signed the paper. Styninger testified that he never told defendant he was under arrest, but did tell defendant "multiple times" that he could go home that day. Defendant asked the police officers after making the statement whether he needed a lawyer. Styninger responded that was up to defendant.

¶ 8    On cross-examination, Styninger admitted the interview with defendant lasted 1 hour and 40 minutes and Styninger did not start writing a statement until 1 hour and 12 minutes into the videotaped interview. Defendant told the officers he dropped out of high school in the tenth grade. Styninger did not know if defendant could read and admitted that he never asked defendant if he knew what the word "waived" means. Styninger further admitted that another officer said to defendant when they were trying to elicit a statement from defendant: "[Y]ou know, we are dudes–we think about sex all the time. You get sexual drives, you get urges, that doesn't make you a bad guy." The police also told defendant to come clean and all will be forgotten. Styninger admitted that they were made aware of alleged sexual misconduct by defendant through the Department, but the police were unaware when the alleged misconduct took place.

¶ 9    Officer Reel testified that the interview began by the officers "building rapport" with defendant. He said defendant initially denied the allegations, but later admitted touching the victim using three fingers. Reel testified he did not promise defendant anything, and defendant was allowed to go home after the interview. Officer Reel admitted he did not hear Styninger tell defendant the interview was being recorded. Reel said he was not present when Styninger wrote defendant's statement. Reel said defendant was not specific as to times or dates when the alleged incident occurred and that defendant indicated some of the incidents occurred when he was babysitting the victim. Reel said that "towards the end of the interview" and before defendant signed the written statement, defendant asked if he needed an attorney.

¶ 10   On cross-examination, Reel admitted that he was wearing a badge and had a weapon when he picked up defendant. The officers were not wearing uniforms, but were in a squad car. Reel admitted he has a three-year-old daughter, and he was uncomfortable making some of the statements he made to defendant about how grown men get off touching three-year-old girls. Reel admitted that because the victim was only three years old, the police did not have many specifics about what occurred and they had to try to fish around and figure out what occurred

- 3 -

as they were interviewing defendant. Initially, defendant denied everything and said he only touched the victim with toilet paper, but after about 1 hour and 10 minutes, Reel could tell defendant had enough and he confessed that he stuck three fingers in the victim's vagina as the police alleged.

¶ 11    After the hearing, the trial court found that the interview was custodial for purposes of *Miranda* and that the State made a *prima facie* showing that defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights so that the "burden now shifts to [defendant] to show that his waiver was not knowing, intelligent, or voluntary." Thus, the trial court denied defendant's motion for a directed verdict and continued the hearing for defendant to establish that the *Miranda* waiver was not knowing, intelligent, or voluntary.

¶ 12    Defendant then underwent two psychological evaluations, one by an expert for the State, Dr. John Raybun, and one by defendant's expert, Dr. Daniel Cuneo, to determine defendant's intellectual functioning and the voluntariness of the confession. On May 15, 2013, the parties appeared again on the motion to suppress. No additional testimony was taken. The parties stipulated to the contents of the two psychological reports.

¶ 13    Dr. Cuneo reported that defendant functions in the mildly mentally retarded range with a verbal IQ of 70, performance IQ of 60, and full-scale IQ of 63. Dr. Cuneo reported that defendant scored in the bottom 1% intellectually and that defendant's overall cognitive abilities are that of a 10-year-old. He also noted that defendant reads at only a 2.8 grade level and that he could not read simple words such as "felt" or "split." He noted that defendant's memory, both short and long term, was impaired and that while in school defendant was diagnosed with depression and attention deficit hyperactivity disorder (ADHD) and had been placed on psychotropic medication. Defendant's school records also showed that defendant has an extremely low frustration tolerance level and will quickly become angry with even a minimum amount of stress. Ultimately, Dr. Cuneo found that defendant's mental illness "significantly negatively impacted his ability to knowingly, intelligently and willingly waive his Miranda Rights on December 6, 2012."

¶ 14    Dr. Rabun also concluded that defendant suffers from mild mental retardation and ADHD and specifically stated that defendant "displays deficits in cognition, in particular staying on topic, suggesting a component of brain damage and poor attention span, a finding consistent with a mental defect." In his opinion, defendant's impaired intellectual capacity qualifies as a mental defect. While Dr. Rabun found that defendant had the ability to read his *Miranda* rights, he nevertheless concluded that due to the stressful nature of the situation on December 6, 2012, defendant's limited intellectual capacity, and defendant's poor attention span, defendant "lacked the capacity to knowingly, intelligently, and voluntarily waive his Miranda rights."

¶ 15    The trial court entered a thoughtful and well-reasoned nine-page order in which it granted defendant's motion to suppress, specifically stating as follows:

> "The [c]ourt finds that because of the [d]efendant's level of intelligence and mental impairments at the time of the interrogation coupled with the circumstances regarding the interrogation as previously discussed, that the [d]efendant did not knowingly, intelligently, and voluntarily waive his *Miranda* rights, and thus his confession and other incriminatory statements were not voluntarily made. Accordingly, the [d]efendant's confession, as well as any other incriminatory statements made during the December 6, 2012, interrogation at the Nashville Police Department, must be

suppressed, along with any testimony, written documents, or video recordings concerning said confession and other incriminatory statements."

¶ 16    The State filed a notice of impairment and a timely notice of appeal.

¶ 17                                    ANALYSIS

¶ 18    The issue raised by the State on appeal is whether the trial court erred in concluding that defendant was in custody at the time of the interview. The State contends that a reasonable person in defendant's position would not have believed he was in custody; therefore, the trial court erred in concluding that the interview was custodial and its decision must be reversed. The State argues that the police were unaware of defendant's mild mental retardation and, therefore, it is not a factor to be considered. The State also insists that the questioning was relaxed, defendant was never told he was under arrest, and a reasonable person innocent of any crime would have felt free to leave. We disagree.

¶ 19    We begin by pointing out that a trial court's ruling on a motion to suppress presents mixed questions of fact and law. *People v. Gherna*, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003). We give deference to the trial court's factual findings and reverse only if they are against the manifest weight of the evidence. *People v. Braggs*, 209 Ill. 2d 492, 505, 810 N.E.2d 472, 481 (2003). However, the ultimate question of whether suppression is warranted is reviewed *de novo*. *Gherna*, 203 Ill. 2d at 175, 784 N.E.2d at 805.

¶ 20    "Under *Miranda*, a statement taken from a defendant is inadmissible in the State's case unless the State demonstrates, by a preponderance of the evidence, that the defendant was first given *Miranda* warnings and that the defendant made a knowing and intelligent waiver of his or her privilege against self-incrimination." *People v. Dennis*, 373 Ill. App. 3d 30, 42, 866 N.E.2d 1264, 1275 (2007). The police only have to supply *Miranda* warnings if the defendant is under "custodial interrogation," which means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. In *Braggs*, our Illinois Supreme Court explained as follows:

> "The determination of whether a defendant is 'in custody' for *Miranda* purposes involves '[t]wo discrete inquiries ***: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.' [Citations.] Thus, in determining whether a person is 'in custody' for purposes of *Miranda*, a court should first ascertain and examine the circumstances surrounding the interrogation, and then ask if, given those circumstances, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Braggs*, 209 Ill. 2d at 505-06, 810 N.E.2d at 481.

¶ 21    The determination of whether a defendant is under custodial interrogation focuses "primarily upon the perceptions of the suspect, rather than the intent of the police." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

¶ 22    Whether an interrogation is custodial is determined by (1) the totality of the circumstances and (2) how a reasonable person would perceive the situation. *People v. Fletcher*, 328 Ill. App. 3d 1062, 1073, 768 N.E.2d 72, 81 (2002). The following factors are relevant in determining whether a statement was made in a custodial setting: (1) the location, time, length, mood, and

mode of the interrogation, (2) the number of police officers present, (3) the presence or absence of family and friends of the accused, (4) any indicia of formal arrest, and (5) the age, intelligence, and mental makeup of the accused. *Braggs*, 209 Ill. 2d at 506, 810 N.E.2d at 482; *People v. Lucas*, 132 Ill. 2d 399, 417, 548 N.E.2d 1003, 1009 (1989); *Fletcher*, 328 Ill. App. 3d at 1073, 768 N.E.2d at 81.

¶ 23    In the instant case, the police escorted defendant out of his home approximately one month prior to his interview so the Department could investigate a tip about possible sexual abuse. Therefore, defendant was aware that there were serious allegations against him. On December 6, 2012, two police officers picked up defendant at his home. While the police were not in uniform, they wore badges and were armed. Defendant saw the officers arrive at his home, but initially fled. When the police came back 10 or 15 minutes later defendant was present and said, "[L]et's just get this shit over with." Defendant was only 18 years of age and was not accompanied by any family members or friends to the police station.

¶ 24    The officers placed defendant in the back of a squad car and took him to the Nashville police station, where he was read *Miranda* warnings from a department-issued form and asked to initial each paragraph and sign the statement. He was then questioned in a small room equipped with recording devices. He was questioned for 1 hour and 40 minutes. As the trial court noted in its order, the officers asked "very leading and suggestive questions" and "were seeking a confession from the [d]efendant." Defendant is in the mildly mentally retarded range and the bottom 1% of the population intellectually. He suffers from ADHD as well as depression. The trial court aptly noted that while such interrogation techniques may not affect the responses of a suspect with a normal level of intelligence and no mental impairment, the circumstances of this interrogation must be considered as to how they affected this particular defendant.

¶ 25    With regard to the mentally challenged and questions of custody, our Illinois Supreme Court has specifically stated: "Just as they are more susceptible to police coercion during a custodial interrogation, the mentally retarded are also more susceptible to the impression that they are, in fact, in custody in the first instance." *Braggs*, 209 Ill. 2d at 511, 810 N.E.2d at 484. Such is the situation in the instant case. Applying the factors set forth in *Braggs* to the facts of the instant case, it is clear that a reasonable person in defendant's position and innocent of any crime would not have felt free to leave the interrogation.

¶ 26    The State cites to *Yarborough v. Alvarado*, 541 U.S. 652 (2004), in support of its position that defendant's mild mental retardation and ADHD have no application to the determination of whether defendant was in custody. In *Yarborough*, the United States Supreme Court found that the circumstances surrounding the 17-year-old suspect's questioning must be considered first and that, given those circumstances, the court must determine whether a reasonable person felt that " 'he or she was not at liberty to terminate the interrogation and leave.' " *Yarborough*, 541 U.S. at 663 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). *Yarborough* points to an objective "in custody" test, which does not involve the individual idiosyncrasies of the person, such as age or prior experience with police. *Yarborough*, 541 U.S. at 666-67. *Yarborough*, however, is distinguishable from the instant case because it did not involve a suspect who was mentally retarded, as was defendant in the instant case. Moreover, we point out that after *Yarborough* was decided, our own Illinois Supreme Court continued to rely on the *Braggs* factors, even expanding the list, in determining if a suspect is "in custody." *People v. Slater*, 228 Ill. 2d 137, 150, 886 N.E.2d 986, 995 (2008).

¶ 27       Considering the totality of the circumstances in the instant case, there is simply no basis for us to conclude that the trial court's order granting defendant's motion to suppress was manifestly erroneous. Defendant was aware he was being investigated by the Department of sexually abusing his father's girlfriend's daughter and was removed from his home by the police a month earlier so the Department could investigate. He witnessed the police come to his home twice on the date in question. He was taken by squad car to the police station by armed police officers. No family members were present. He was barely an adult, and it is well established in the record that defendant suffers from diminished mental capacity. The police were aware defendant dropped out of high school in the tenth grade. The police interviewed defendant in a small room with the door shut for over an hour before defendant made any incriminating statements. The interrogation even made one of the police officers uneasy due to the nature of the questioning and the tactics that were used.

¶ 28       Under these circumstances, we find the trial court did not err in finding that defendant was in custody during the interrogation by police on December 6, 2012. Both experts who examined defendant concluded that defendant could not knowingly, intelligently, and voluntarily waive his *Miranda* rights. It is abundantly clear from the record before us that the defendant in this case did not knowingly and intelligently waive his *Miranda* rights. The State does not even attempt to argue to the contrary here.

¶ 29       Accordingly, we hereby affirm the order of the circuit court of Washington County which found defendant was in custody at the time of the interrogation and granted defendant's motion to suppress.

¶ 30       Affirmed.